STATE OF NORTH CAROLINA v. DAVID LEE WHITTINGTON, JR.

No. 350A85

(Filed 29 August 1986)

**1. Rape and Allied Offenses § 5— first degree sexual offense—defendant in possession of knife during assault**

There was no merit to defendant's contention that, because the State's evidence showed that he was not in possession or control of a knife during the commission of the sexual assault, the trial judge erred in failing to dismiss the charge of first degree sexual offense, since the evidence tended to show that defendant engaged the victim in a brief conversation at a car wash; defendant then pulled a knife on the victim and threatened her; defendant grabbed the victim and began dragging her to the rear of the car wash; during this time the victim placed both hands on the blade of the knife to keep it from getting close to her; after defendant had dragged the victim about 80 feet, both fell to the ground and the victim twisted the knife out of defendant's hand and got it away from him; during the struggle the victim lost consciousness; when the victim awakened, she felt defendant penetrate her vagina with his finger; there was thus a series of incidents forming a continuous transaction between defendant's wielding the knife and the sexual assault; the knife was employed during this period of time in an effort to force the victim to give in to defendant's demands; and it was therefore of no consequence that defendant was not in possession of the deadly weapon at the precise moment that penetration occurred.

**2. Kidnapping § 1.2— asportation—sufficiency to support first degree kidnapping conviction**

There was no merit to defendant's contention that there was insufficient evidence presented at trial of a removal separate and apart from the sexual assault as required to support a conviction of first degree kidnapping, since the evidence tended to show that defendant threatened the victim with a knife

at the front of a car wash and then dragged her approximately 80 feet to the rear of the car wash where he sexually assaulted her; asportation of the victim was not a necessary element of the sexual assault; defendant could have perpetrated the offense when he first threatened the victim but instead chose to remove the victim away from a brightly lit area, near houses and the highway, to a darker, more secluded area; and this removal, designed to facilitate defendant's perpetration of the sexual assault, was not a mere technical asportation but was separate and apart from that which is inherent in a first degree sexual offense.

3. **Kidnapping § 2; Rape and Allied Offenses § 7— first degree kidnapping based on first degree sexual offense—punishment for both crimes improper**

   Since defendant's conviction of a first degree sexual offense was used to raise the kidnapping to first degree kidnapping in this case, the trial judge erred in sentencing defendant for both crimes.

4. **Rape and Allied Offenses § 4— judge's question of witness—clarification of testimony—question proper**

   In a prosecution of defendant for first degree sexual offense, there was no merit to defendant's contention that the trial judge erred in asking the victim whether defendant penetrated her vagina with his finger because this questioning revealed to the jury the judge's "clear" opinion as to defendant's guilt, since the judge's questions in this case merely served to clarify the victim's testimony that defendant had penetrated her "private parts."

APPEAL by defendant from judgment imposing concurrent sentences of life imprisonment and twelve years entered by *Wood, J.,* at the 15 April 1985 Criminal Session of Superior Court, WILKES County, upon jury verdicts of guilty of first-degree sexual offense and first-degree kidnapping. Defendant's motion to bypass the Court of Appeals on appeal of the twelve-year sentence in the kidnapping case was allowed 22 July 1985. Heard in the Supreme Court 12 February 1986.

*Lacy H. Thornburg, Attorney General, by Thomas G. Meacham, Jr., Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellant.*

FRYE, Justice.

Defendant brings forward four assignments of error on this appeal. First, defendant contends that the trial court erred in failing to dismiss the charge of first-degree sexual offense since the

evidence was insufficient to support his conviction. Second, he contends that the trial court erred in failing to dismiss the charge of first-degree kidnapping since there was insufficient evidence of a removal separate and apart from the sexual offense. Third, he contends that the trial court erred in denying his motion to dismiss the charge of first-degree kidnapping as the jury could not properly find that the victim was either seriously injured or sexually assaulted. Lastly, defendant contends that the trial judge erred in asking the victim whether defendant penetrated her vagina with his finger. We find merit in defendant's third contention, but only as an error in sentencing.

Defendant was charged with first-degree sexual offense, first-degree kidnapping, and assault with a deadly weapon with intent to kill inflicting serious injury. The State's evidence tended to show that on 19 September 1984, the victim left her home around 9:30 p.m. to go to her job where she worked on the third shift. In route to work, she stopped at a self-service car wash to rinse off her car. As she was cleaning her car, a man walked towards her and asked her if she had change for a dollar. The victim answered negatively and indicated that the dollar bill change machine at the car wash was broken. The victim walked to the rear of her car and showed the man the location of the change machine. When the victim turned around, the man was holding a knife and told her that she "had better do what he said because he had a gun in his back pocket." The knife was about the size of a kitchen butcher knife. The man told the victim to drop the water sprayer, grabbed her from behind, and began dragging her to the rear of the car wash. During this time, the man was choking the victim "real, real bad" and she was "kicking and trying to get away from him," and put both her hands on the blade of the knife to keep it from getting close to her. After dragging the victim about eighty feet, the man and the victim fell to the ground. The victim was able to "twist" the knife out of the man's hand and throw it out of his grasp. The man began hitting the victim in her face and choking her. The victim continued to struggle with the man until she lost consciousness. Sometime later, as the victim regained consciousness, she felt "something hard" against her throat and felt "something in the front" of her pants. The victim felt defendant penetrate her vagina with his finger. She became very upset and jumped up and ran to a house across the street from the car wash. The man got into his car and drove away.

At the trial, the victim identified defendant as the man who attacked her.

Defendant testified in his own behalf. Defendant's testimony was that on 19 September 1984 he stopped at the car wash where the victim was washing her car. He did so because he thought he recognized her car as one he had seen earlier that day from which the passengers shouted racial slurs at him. Before approaching the car, defendant stuck his knife in his pants since he didn't know how many people were in the car. He walked to the stall where the victim was washing her car and asked her if she had any change. The victim told him the change machine didn't work and began squirting water on him. Defendant grabbed her and tried to force her to drop the hose. The victim kicked him, causing the knife to fall from his pants onto the ground. The victim gained possession of the knife. Defendant and the victim, while struggling for the knife, fell to the ground. Defendant forced the victim to release the knife and got into his car and left the car wash.

The jury returned verdicts of guilty of first-degree sexual offense, first-degree kidnapping, and assault with a deadly weapon. Judgment was arrested on the assault conviction.

I.

[1] Defendant contends that the trial judge erred in failing to dismiss the charge of first-degree sexual offense against him since the evidence was insufficient to support his conviction. By this assignment, defendant argues that because the State's evidence showed that he was not in possession or control of the knife during the commission of the sexual assault, the trial judge erred in allowing the case to go to the jury on a theory greater than second-degree sexual offense.

Defendant was convicted of first-degree sexual offense under N.C.G.S. § 14-27.4(a)(2)(a) which provides:

(a) A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:

. . . .

(2) With another person by force and against the will of the other person, and:

> (a) Employs or displays a dangerous or deadly weap-
> on or an article which the other person reason-
> ably believes to be a dangerous or deadly weapon
> . . . .

Defendant contends that he did not employ or display a danger-
ous or deadly weapon during the commission of the sexual assault
since prior to the act the victim managed to take the knife away
from him and throw it out of his grasp. This Court has examined
like arguments in cases under N.C.G.S. § 14-27.2(a)(2)(a), the first-
degree rape statute, which uses language identical to that found
in N.C.G.S. § 14-27.4(a)(2)(a).

In *State v. Sturdivant*, 304 N.C. 293, 283 S.E. 2d 719 (1981),
the defendant displayed a knife to the victim after the completion
of the first act of rape. The defendant then used the knife to cut
off the victim's slip and committed additional acts of rape. On ap-
peal defendant contended that there was insufficient evidence to
convict him of first-degree rape on the theory that he employed a
deadly weapon in the commission of the offense since the State's
evidence did not tend to show that he employed the pocketknife
during the actual commission of the rape. In resolving the issue,
the Court compared the old rape statute to the new one, N.C.G.S.
§ 14-27.2 and said:

> In pertinent part, G.S. 14-27.2 provides that forcible, non-
> consensual vaginal intercourse constitutes first degree rape if
> the perpetrator 'employs or displays a dangerous or deadly
> weapon.' By its terms, the new rape statute no longer re-
> quires an express showing by the State that a deadly weapon
> was used *in a particular manner* to make out a case of the
> crime in the first degree. In contrast, the prior statute, G.S.
> 14-21(1)(b) (Cum. Supp. 1977), obligated the State to show spe-
> cifically that the weapon was used to overcome the victim's
> resistance or to procure her submission. (Citations omitted.)
> The current statute, however, simply necessitates a showing
> that a dangerous or deadly weapon was employed or dis-
> played in the course of a rape *period*. (Emphases in original.)

In footnote 1, the Court stated:

> We perceive that the Legislature intended to make im-
> plicit in G.S. 14-27.2 a matter of ordinary common sense: that

the use of a deadly weapon, in any manner, in the course of a rape offense, always has some tendency to assist, if not entirely enable, the perpetrator to accomplish his evil design upon the victim, who is usually unarmed.

*Sturdivant,* 304 N.C. at 299, 283 S.E. 2d at 724-25.

In *State v. Powell,* 306 N.C. 718, 295 S.E. 2d 413 (1982), the victim testified that the defendant held a knife to her throat and ordered her to accompany him to an upstairs bedroom where he raped her. The victim further testified that after leaving the downstairs area she did not see the knife again and did not know what happened to it. This Court, relying on the holding in *Sturdivant,* held that the State presented sufficient evidence that a deadly or dangerous weapon was employed in a manner consistent with that contemplated by N.C.G.S. § 14-27.2 to accomplish the rape.

In *State v. Blackstock,* 314 N.C. 232, 241, 333 S.E. 2d 245, 251 (1985), this Court stated that *Sturdivant* "stands for the proposition that if a weapon is employed or displayed in the course of the rape period it is sufficient to support the verdict of guilty upon a charge of first-degree rape." *Id.* The Court defined the time frame encompassing the "rape period" with regard to the infliction of serious personal injury under N.C.G.S. § 14-27.2(a)(2)(b), an element which elevates rape and sexual offense from second to first degree offenses, by saying that "the element of infliction of serious personal injury upon the victim or another person in the crimes of first-degree sexual offense and first-degree rape is sufficiently connected in time to the sexual acts when there is a series of incidents forming one continuous transaction between the rape or sexual offense and the infliction of the serious personal injury." *Blackstock,* 314 N.C. at 242, 333 S.E. 2d at 252.

We find that these cases are instructive in resolving the case at hand.

At trial, the victim testified that after engaging in a brief conversation with defendant at the front of the car wash, "[defendant] had a knife pulled on me and he said if I didn't do what he said—that I had better do what he said because he had a gun in his back pocket." Defendant grabbed the victim and began dragging her to the rear of the car wash. During this time, the

victim placed both hands on the blade of the knife to keep it from getting close to her. After defendant had dragged the victim about eighty feet, both fell to the ground and the victim "twisted the knife out of his hand and got it away from him." During the struggle, the victim lost consciousness. When the victim awakened, she felt defendant penetrate her vagina with his finger.

This testimony reveals a series of incidents forming a continuous transaction between defendant's wielding the knife and the sexual assault. The knife was employed during this period of time in an effort to force the victim to give in to defendant's demands. Under the holdings in *Sturdivant* and *Powell*, it is of no consequence that defendant was not in possession of the deadly weapon at the precise moment that penetration occurred. The knife had been used during the course of the assault to assist the perpetrator in accomplishing his evil design upon the victim who was unarmed/ Therefore, the trial judge correctly denied defendant's motion to dismiss the charge of first-degree sexual offense.

## II.

[2] Defendant next assigns as error the trial court's refusal to dismiss the charge of kidnapping against him. The indictment charges defendant with kidnapping the victim "by unlawfully restraining [the victim] and removing [the victim] from one place to another without [the victim's] consent, and for the purpose of facilitating the commission of the felony of sexual offense." Defendant argues that there was insufficient evidence presented at trial of a removal separate and apart from the sexual assault as required to support a conviction of first-degree kidnapping, and therefore the trial judge erred in failing to dismiss the kidnapping charge.

N.C.G.S. § 14-39 provides in pertinent part:

(a) Any person who shall unlawfully confine, restrain, or *remove from one place to another*, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

(1) Holding such other person for ransom or as a hostage or using such other person as a shield; or

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person.

(4) Holding such other person in involuntary servitude in violation of G.S. 14-43.2.

N.C.G.S. § 14-39(a) (1981 & Cum. Supp. 1985). (Emphasis added.)

In *State v. Irwin*, 304 N.C. 93, 282 S.E. 2d 439 (1981), the defendant, in attempting to rob a drug store, forced one of the employees from the front to the back of the store in the general area of the prescription counter and safe. This Court held that the victim's removal to the back of the store was an inherent and integral part of the attempted armed robbery and was insufficient to support a kidnapping conviction. The Court in *Irwin* construed the phrase "remove from one place to another" to require "a removal separate and apart from that which is an inherent, inevitable part of the commission of another felony." *Irwin*, 304 N.C. at 103, 282 S.E. 2d at 446. The Court further stated that "to permit separate and additional punishment where there has been only a technical asportation, inherent in the other offense perpetrated, would violate a defendant's constitutional protection against double jeopardy." *Id.*

In *State v. Newman*, 308 N.C. 231, 302 S.E. 2d 174 (1983), this Court was asked to consider whether the defendants' actions in taking the victim from a store parking lot into the woods behind the store constituted sufficient asportation to support a conviction of kidnapping. The Court held that:

The facts of this case show that defendants abducted [the victim] from the parking lot of the [name of] food store. She was taken to a wooded area behind the store. Removal of [the victim] from her automobile to the location where the rape occurred was not such asportation as was inherent in the commission of the crime of rape. Rather, it was a separate

course of conduct designed to remove her from the view of a passerby who might have hindered the commission of the crime. To this extent the action of removal was taken for the purpose of facilitating the felony of first-degree rape. Thus, defendant's conduct fell within the purview of G.S. § 14-39 and the evidence was sufficient to sustain a conviction of kidnapping under that section. The trial judge properly denied defendant's motion to dismiss the charge of kidnapping.

*Newman*, 308 N.C. at 239-40, 302 S.E. 2d at 180-81.

In *Newman*, the Court, citing *State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978), stated that in enacting N.C.G.S. § 14-39, "it was clearly the intent of the Legislature to make resort to a tape measure or a stop watch unnecessary in determining whether the crime of kidnapping has been committed." *Id.*

In *State v. Tucker*, 317 N.C. 532, 346 S.E. 2d 417 (1986), this Court held that the trial judge correctly refused to dismiss the kidnapping charges when the evidence disclosed that defendant exposed the victim to greater danger than was involved in the sexual assaults by removing her from his truck and dragging her down to a river and under a bridge, injuring her in the process, and by insuring that passersby would not witness or hinder the commission of the sexual crimes.

The facts in the instant case show that defendant threatened the victim with a knife at the front of the car wash and then dragged her approximately eighty feet to the rear of the car wash where he sexually assaulted her. Asportation of the victim was not a necessary element of the sexual assault. Defendant could have perpetrated the offense when he first threatened the victim. Instead, he chose to remove the victim away from a brightly lit area, near houses and the highway, to a darker, more secluded area. This removal, designed to facilitate defendant's perpetration of the sexual assault, was not a mere technical asportation. The removal of the victim was separate and apart from that which is inherent in a first-degree sexual offense. Therefore, the trial judge did not err in denying defendant's motion to dismiss the kidnapping charge.

## III.

**[3]** Defendant's next assignment of error also concerns his kidnapping conviction. Defendant contends that the trial court erred in denying his motion to dismiss the kidnapping charge because (1) the State failed to prove that the victim was seriously injured during her encounter with defendant, and (2) the principle of double jeopardy precludes the use of the sexual assault to support the first-degree kidnapping conviction since defendant was also convicted of first-degree sexual offense.

N.C.G.S. § 14-39(b) provides:

(b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class D felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.

The trial judge instructed the jury that it could find defendant guilty of first-degree kidnapping if it found, in addition to the elements set forth in N.C.G.S. § 14-39(a), that the victim "had been sexually assaulted *or* had been seriously injured." The jury returned a verdict of guilty of first-degree kidnapping but did not specify on which theory it relied in reaching its verdict. Such a verdict is ambiguous and should be construed in favor of defendant. *See State v. Gardner,* 315 N.C. 444, 340 S.E. 2d 701 (1986). This Court is not free to speculate as to the basis of a jury's verdict. Therefore, we must assume that the jury relied on defendant's commission of the sexual assault in finding him guilty of first-degree kidnapping. In *State v. Freeland,* 316 N.C. 13, 21-23, 340 S.E. 2d 35, 39-40 (1986), this Court determined that the legislature did not intend that defendants be punished for both the first degree kidnapping and the underlying sexual assault. Therefore, since defendant's conviction of the sexual offense was used to raise the kidnapping to first-degree kidnapping in this case, the trial judge erred in sentencing defendant for both crimes. *Id.* Since defendant was erroneously subjected to double punishment, it will be necessary to remand this case to the trial court for a

new sentencing hearing. *Id.* The trial court may arrest judgment on the first-degree kidnapping conviction and resentence defendant for second-degree kidnapping or it may arrest judgment on the sexual assault conviction. *Id.*

### IV.

[4]   Lastly, defendant contends that the trial judge erred in asking the victim whether defendant penetrated her vagina with his finger since this questioning revealed to the jury the judge's "clear" opinion as to defendant's guilt in the charged offense of first-degree sexual offense.

At trial the victim testified as follows:

(DIRECT EXAMINATION)

A. And I felt something penetrating my body.

Q. Where did you feel something penetrate your body?

A. In my panties.

Q. Was it, would you state whether or not it was your private parts?

A. Yes, sir, it was.

. . . .

Q. Where was his arms and hands at that time?

A. In my pants.

. . . .

Q. And you felt his hand penetrating you on the inside in your private parts?

A. Yes, sir.

(CROSS EXAMINATION)

Q. Okay, You were screaming while this hard thing was still pressed against your throat?

A. No, sir.

Q. Well, did he remove it from your throat before you started screaming?

A. Sir, I have told you when I felt his hand penetrating my body I don't know what happened. All I know is I got away and I didn't scream until I got . . .

COURT: When you say penetrating your body, what are you talking about? EXCEPTION NO. 3

WITNESS: His fingers.

COURT: Penetrating you where? EXCEPTION NO. 4

WITNESS: In my panties.

COURT: In your, you say your private parts. Are you talking about your vagina? EXCEPTION NO. 5

WITNESS: Yes, sir.

COURT: All right.

The relevant statute, N.C.G.S. § 15A-1222, provides that "the judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." However, the trial judge may question a witness for the purpose of clarifying his testimony and promoting a better understanding of it. *State v. Jackson*, 306 N.C. 642, 295 S.E. 2d 383 (1982); *State v. Alston*, 38 N.C. App. 219, 247 S.E. 2d 726 (1978). Such questioning must be conducted in such a manner as to avoid prejudice to either party. *State v. Alston*, 38 N.C. App. 219, 247 S.E. 2d 726. We have carefully reviewed the questions asked by the trial judge to which defendant excepts and find no error in the judge's actions. The questions merely served to clarify the victim's testimony that defendant had penetrated her "private parts." The questions did not intimate the judge's opinion as to the victim's credibility, defendant's guilt, or a factual controversy to be resolved by the jury. *See State v. Jackson*, 306 N.C. 642, 295 S.E. 2d 383. This assignment of error is rejected.

In defendant's trial we find no error. For the reasons indicated in Part III of this opinion, this case is remanded to the trial court for a new sentencing hearing.

Remanded for new sentencing hearing.