STATE v. WIGGINS

[136 N.C. App. 735 (2000)]

———————————

STATE OF NORTH CAROLINA v. KENNETH WIGGINS

No. COA99-284

(Filed 7 March 2000)

**1. Evidence— direct examination—leading questions**

The trial court did not abuse its discretion in a first-degree kidnapping and first-degree rape case by sustaining the State's objections to defendant's leading questions on direct examination, in an effort to show the victim made a prior inconsistent statement about defendant's use of a knife, because: (1) defendant did not tender the witness as a hostile witness at trial, and a

STATE v. WIGGINS

[136 N.C. App. 735 (2000)]

review of the record does not reveal that she was unwilling or biased against defendant, N.C.G.S. § 8C-1, Rule 611(c); (2) defendant abandoned his argument that the witness was called to contradict the testimony of a prior witness, since he did not make this argument at trial, N.C. R. App. P. 28(b)(5); and (3) even if the trial court erred, there was no prejudicial error since the witness testified her memory of her conversation with the victim was unclear.

2. **Sentencing— double punishment—first-degree kidnapping—first-degree rape—improper**

Although the trial court did not err in instructing on first-degree kidnapping based on sexual assault and on first-degree rape, defendant's sentence is vacated and remanded since he was improperly convicted of and sentenced to double punishment for first-degree kidnapping and first-degree rape because: (1) the verdict sheet is ambiguous as to whether the jury relied on the theory that the victim was not released in a safe place or the theory that the victim had been sexually assaulted to elevate the kidnapping charge to first-degree; and (2) construing the ambiguous verdict in favor of defendant reveals the first-degree kidnapping conviction arose from the same sexual assault which was the basis of the first-degree rape conviction.

3. **Evidence— impeachment—specific ' instance of conduct—direct examination—inadmissible—not probative of truthfulness**

The trial court did not err in a first-degree kidnapping and first-degree rape case by excluding evidence of the victim's theft of money and cocaine from defendant and defendant's reaction to the alleged theft, which defendant attempted to elicit on direct examination from a witness to impeach the credibility of the victim by inquiring into a specific instance of conduct of the victim, because: (1) defendant's inquiry into the specific instance of conduct did not occur on cross-examination of a witness but rather on direct examination, and therefore, the witness's voir dire testimony was not admissible under N.C.G.S. § 8C-1, Rule 608(b); and (2) the voir dire testimony is not probative of the victim's truthfulness or untruthfulness.

Appeal by defendant from judgment entered 9 April 1998 by Judge Ernest B. Fullwood in Superior Court, New Hanover County. Heard in the Court of Appeals 26 January 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General Edwin L. Gavin, II, for the State.*

*Nora Henry Hargrove for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Kenneth Wiggins ("defendant") was indicted for attempted first degree sexual offense, first degree rape, first degree kidnapping, and assault on a female. The court dismissed the charges of attempted first degree sexual offense and assault on a female. Following a jury verdict of guilty of first degree kidnapping and first degree rape, the trial court imposed an active sentence of 230 months with the corresponding maximum of 285 months. Defendant appeals.

The State's evidence at trial tended to show the following. Teresa Ann Pearson ("the victim") and defendant initially had a dating relationship. After the dating relationship ended, defendant continued to contact the victim. On 9 August 1997, the victim alleged before a magistrate that defendant was communicating threats to her.

On 13 August 1997 at 8:30 p.m., the victim drove her car to Russell's Quick Mart in Wilmington, North Carolina accompanied by two friends, Joyce Barnett and Nita McKeithan. Defendant jumped into the backseat of the car, put a knife to the victim's throat, and instructed her to drive. The victim drove to Rankin Street, where defendant ordered Barnett and McKeithan to exit the car. Barnett reported the incident to the police and advised the police to search for defendant and the victim in Currie, North Carolina. Defendant forced the victim to move to the passenger seat. While brandishing the knife in his right hand, defendant drove to his aunt's home in Currie where he occasionally lived. Defendant told the victim she was going to die. After arriving at his aunt's home, defendant drove the car into the woods, opened the hood and disabled the engine.

Defendant led the victim to the house, took her to a bedroom, and ordered her to undress. When the victim hesitated, defendant again asked her if she wanted to die. The victim indicated that she did not want to die and complied with the demand. Defendant undressed and told the victim to perform fellatio on him. She hesitated and defendant engaged in vaginal intercourse with her while continuing to hold the knife. Defendant led the victim to the living room and forced her to lie on the couch. He told her he could cut her breasts off and proceeded to cut her left breast with the knife. He also cut her left leg.

Law enforcement officers from the Wilmington Police and the Pender County Sheriff's Departments arrived at the house at approximately 11:00 p.m. Defendant saw the automobile lights in the driveway and acknowledged that they had come for him. The victim told defendant to calm down and that she would send them away. She wrapped herself in a sheet and opened the door while defendant stood behind her with the knife. Corporal Andrew Paluck of the Pender County Sheriff's Department asked the victim to identify herself and she did so. The victim was crying. Corporal Paluck asked her to step outside of the house. She stepped onto the porch and told Corporal Paluck that defendant was trying to kill her. Corporal Paluck escorted the victim to his car and entered the house with another officer to question defendant. Defendant denied that there existed any problem. Corporal Paluck found a knife on a mantle just inside the door and noted that some activity had occurred in the bed.

A hospital examination revealed that the victim suffered a linear abrasion to her left breast, another to her left thigh, and several more on her upper back. All of the linear abrasions were consistent with knife wounds. The victim gave written and oral statements consistent with the above facts recited.

On appeal, defendant argues that the trial court erred in: (I) sustaining the State's objections to leading questions on direct examination asked by defendant to his witness; (II) instructing on first degree kidnapping based on sexual assault and on first degree rape; and (III) excluding evidence of the victim's theft from the defendant and the defendant's reaction to the alleged theft.

[1] By his first assignment of error, defendant argues that the trial court abused its discretion in sustaining the State's objections to leading questions asked by defendant to his witness on direct examination. According to defendant, as a result of the trial court's ruling, the jury was prevented from hearing evidence of a prior inconsistent statement by the victim, thereby depriving defendant of his right of confrontation, right to present a defense, and right to due process, contrary to the state and federal constitutions. We cannot agree.

A leading question is one which suggests the desired response and often may be answered "yes" or "no." *State v. Greene*, 285 N.C. 482, 492, 206 S.E.2d 229, 235 (1974). Whether to allow leading questions is in the sound discretion of the trial court and the ruling of the trial court will not be disturbed on appeal absent an abuse of discre-

tion. *State v. White*, 349 N.C. 535, 556, 508 S.E.2d 253, 267 (1998), *cert. denied*, 527 U.S. 1026, 144 L. Ed. 2d 779 (1999). Abuse of discretion occurs when the ruling of the trial court is manifestly unsupported by reason. *State v. York*, 347 N.C. 79, 90, 489 S.E.2d 380, 387 (1997).

Leading questions should not be used on direct examination except to develop the testimony of a witness. N.C. Gen. Stat. § 8C-1, Rule 611(c) (1992). "It is generally recognized that an examining counsel should not ask his own witness leading questions on direct examination." *Greene*, 285 N.C. at 492, 206 S.E.2d at 235. The purpose of the general rule is to prevent counsel from suggesting the desired answer to an eager, friendly witness. *State v. Hosey*, 318 N.C. 330, 334, 348 S.E.2d 805, 808 (1986). Nonetheless, counsel should be permitted to ask leading questions on direct examination when the witness is:

(1) hostile or unwilling to testify, (2) has difficulty in understanding the question because of immaturity, age, infirmity or ignorance or where (3) the inquiry is into a subject of delicate nature such as sexual matters, (4) the witness is called to contradict the testimony of prior witnesses, (5) the examiner seeks to aid the witness' recollection or refresh his memory when the witness has exhausted his memory without stating the particular matters required, (6) the questions are asked for securing preliminary or introductory testimony, (7) the examiner directs attention to the subject matter at hand without suggesting answers and (8) the mode of questioning is best calculated to elicit the truth.

*Greene*, 285 N.C. at 492-93, 206 S.E.2d at 236.

In the present case, defendant called Phyllis Gibson as a witness in an effort to show that the victim had made a prior inconsistent statement about defendant's use of a knife. The following exchange took place:

Q: Did you and I meet over at the jailhouse last week?

A: Yes, sir, yes, we did.

Q: Did you tell me that you had actually talked to [the victim]?

[THE STATE]: Objection to the leading.

THE COURT: Sustained.

. . .

Q: Did you tell me you talked to [the victim]?

[THE STATE]: Objection.

THE COURT: Sustained.

Defendant then made the following offer of proof:

Q: Miss Gibson, did you tell me last week that you had talked to [the victim] about these events after they allegedly occurred?

A: Yeah, yeah, yeah. She had come to my house and we had like talked about it but, word for word, I don't remember everything we said, 'cause I mean, it wasn't nothing that we dwell on it. Yes, I did, yes.

Q: Did she tell you she was attacked by [defendant]?

A: I'm not sure she did or didn't.

Q: Did you hear her say anything about a knife?

A: They said he was crazy, something like that.

Q: Did she say anything about him having a knife?

A: Not to my knowledge, no.

Defendant argues that he should have been allowed to ask leading questions of Gibson because she was a hostile witness. However, defendant did not tender Gibson as a hostile witness at trial, and our examination of the transcript does not reveal that she was unwilling or biased against defendant.

While defendant failed to discuss *Greene* in his brief, a *Greene* exception to the general rule that leading questions are not allowed on direct examination arguably applies in the present case. Gibson was called to contradict the testimony of a prior witness. However, defendant failed to argue the exception at trial and failed to cite any case law in support of its application in his brief on appeal. The argument that defendant should have been allowed to ask leading questions on direct examination because the witness was called to contradict the testimony of a prior witness is therefore abandoned. N.C.R. App. P. 28(b)(5). In any event, the exceptions listed in *Greene* are mere guidelines; whether to allow leading questions is ultimately in the sound discretion of the trial court. The trial court did not abuse its discretion where the court sustained the timely objection of the State to a leading question posed by counsel on direct examination of a non-hostile witness.

Moreover, even if the trial court had erred, such error would not have been prejudicial. On *voir dire*, Gibson testified that her memory of her conversation with the victim was unclear. Gibson was not certain whether the victim had told her that defendant attacked the victim. Gibson further testified that to her knowledge, the victim did not say anything about the defendant wielding a knife. Defendant's offer of proof failed to establish conclusively that the victim made a prior inconsistent statement.

We hold that the trial court did not abuse its discretion in sustaining the State's objections to leading questions asked by defendant to his witness on direct examination. As such, defendant was not deprived of his rights under the state and federal constitutions.

[2] By his second assignment of error, defendant argues that the trial court erred in instructing on first degree kidnapping based on sexual assault and on first degree rape. Defendant contends that said instruction permitted him to receive multiple punishments for the same offense contrary to the state and federal constitutions. While we are not convinced that the trial court erred in its instruction to the jury, we agree that defendant was improperly convicted of and sentenced to first degree kidnapping and first degree rape.

Under the Double Jeopardy Clause of the United States Constitution, a defendant may not be subjected to trial and possible conviction more than one time for an alleged offense. *Missouri v. Hunter*, 459 U.S. 359, 365, 74 L. Ed. 2d 535, 542 (1983). A first degree kidnapping occurs where the person kidnapped was not released in a safe place, was seriously injured, or was sexually assaulted. N.C. Gen. Stat. § 14-39(b) (1993). The North Carolina legislature "did not intend that defendants be punished for both the first degree kidnapping and the underlying sexual assault." *State. v. Freeland*, 316 N.C. 13, 23, 340 S.E.2d 35, 40-41 (1986). A verdict which is ambiguous must be construed in favor of the defendant. *State v. Whittington*, 318 N.C. 114, 347 S.E.2d 403 (1986).

In the present case, the trial court instructed the jury that in order to find defendant guilty of first degree kidnapping, it had to find that the victim was not released in a safe place or that the victim had been sexually assaulted. The jury returned a verdict of guilty of first degree kidnapping and guilty of first degree rape. However, the verdict sheet did not specify on which theory the jury relied in reaching the guilty verdict on first degree kidnapping. Thus, the verdict is ambiguous. Given that the trial court instructed on both theories, the jury may

have relied on the sexual assault to elevate the kidnapping to the first degree. Construing the ambiguous verdict in favor of defendant, the first degree kidnapping conviction arose from the same sexual assault which was the basis of the first degree rape conviction.

Having concluded that defendant was erroneously subjected to double punishment, we vacate the sentence and remand this case to the trial court for a new sentencing hearing. On remand, the trial court may: (1) arrest judgment on the first degree kidnapping conviction and resentence for second degree kidnapping and first degree rape; or (2) arrest judgment for the first degree rape conviction and sentence on first degree kidnapping. *Id.* at 124, 347 S.E.2d at 408-09; *State v. Young*, 319 N.C. 661, 356 S.E.2d 347 (1987).

[3] By his third assignment of error, defendant argues that the trial court erred in excluding evidence of the victim's theft from defendant and defendant's reaction to the alleged theft in that the trial court deprived defendant of his right to confrontation, right to present a defense, and right of due process, contrary to the state and federal constitutions. We cannot agree.

According to our Rules of Evidence, a specific instance of conduct may be inquired into on cross-examination where it is probative of the credibility of a witness.

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting [her] credibility . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning [her] character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

N.C. Gen. Stat. § 8C-1, Rule 608(b) (1992).

In the present case, defendant called Carolyn Hasty to the stand. Hasty testified without objection that she saw the victim steal defendant's money and cocaine. When counsel for defendant asked Hasty the date of the theft, the State objected and the trial court sustained the objection. Counsel for defendant made an offer of proof during which Hasty described the theft and stated that defendant was not angry with the victim following the theft. According to defendant, Hasty's testimony was competent evidence of the victim's credibility

NORTH BLVD. PLAZA v. NORTH BLVD. ASSOCS.

[136 N.C. App. 743 (2000)]

in that it tended to disprove the victim's assertion that she was afraid of defendant.

Through his direct examination of Carolyn Hasty, defendant attempted to impeach the credibility of the victim by inquiring into a specific instance of conduct of the victim. Hasty had not testified as to the truthfulness or untruthfulness of the victim prior to defense counsel's inquiry into the specific instance of conduct. Defense counsel's inquiry into the specific instance of conduct did not occur on cross-examination, but rather on direct examination. Therefore, Hasty's *voir dire* testimony was not admissible under Rule 608(b).

Furthermore, we are not convinced that the *voir dire* testimony is probative of the victim's truthfulness or untruthfulness. Even if the victim stole from defendant in one instance, she may have felt afraid of defendant in a second instance in which, according to her testimony, defendant entered her car without her permission while brandishing a knife. We conclude that the trial court did not err in excluding evidence of the victim's theft from the defendant and the defendant's reaction to the alleged theft.

For the reasons stated herein, we hold that defendant received a fair trial, free of prejudicial error, but the sentence is vacated and the case is remanded to the trial court for a new sentencing hearing.

Remanded for a new sentencing hearing.

Judges MARTIN and HORTON concur.