STATE OF NORTH CAROLINA
v.
TONY LAMONT BRITT.
No. COA07-461
Court of Appeals of North Carolina.
Filed November 20, 2007
This case not for publication
Attorney General Roy Cooper, by Associate Attorney General Catherine F. Jordan, attorney for the State.
Kathryn L. Vandenberg, attorney for defendant.
ELMORE, Judge.
Tony Lamont Britt (defendant) appeals from his conviction by a jury of breaking and entering a motor vehicle, attempted larceny, and being an habitual felon. At trial, the State introduced evidence tending to show the following:
On the afternoon of 8 August 2005, Eric Chapman (Chapman) parked his car before attending a college class. Before leaving his car, Chapman locked the car doors and cracked the driver's side rear window and the passenger's side front window approximately one inch. Chapman's car stereo had a detachable faceplate that was secured to the dashboard when he left. Upon walking back to his car after class, Chapman heard his car alarm sound, which is triggered either when a locked door is opened without a key or certain pressure points on the car are touched. Chapman ran toward his car and called the police on his cellular telephone. As he approached his car, Chapman saw defendant and another man standing around his car. Defendant was standing on the driver's side and the second man stood on the passenger's side. Both men were peering into the car. Chapman also observed defendant's accomplice closing the passenger's side car door.
When Chapman asked the men what they were doing, they did not respond and walked away. When Chapman looked into his car he did not see the detachable faceplate on his car stereo. Chapman began following the men on foot and, when he confronted them, defendant slapped Chapman in the face. Chapman continued to follow the men and, after the men separated, Chapman followed defendant for approximately one mile.
When defendant began to run, Chapman was unable to continue his pursuit. However, Chapman then met the law enforcement officer who had responded to his call and, together, they proceeded in the officer's patrol car in the direction defendant had run. Approximately one minute later, Chapman and the police officer spotted defendant and defendant was arrested.
After defendant's arrest, Chapman and the officer returned to inspect Chapman's car. They found all four doors unlocked, the stereo faceplate lying on the floor of the car and the glove box open.
Following a jury trial, defendant was convicted of all charges. Defendant now appeals.
In his first assignment of error, defendant contends that there was insufficient evidence to support his conviction for breaking and entering. When reviewing a motion to dismiss, we view "the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." State v. Morgan, 359 N.C. 131, 161, 604 S.E.2d 886, 904 (2004), cert. denied, 546 U.S. 830, 163 L. Ed. 2d 79 (2005). If we find that "substantial evidence exists to support each essential element of the crime charged and that defendant was the perpetrator, it is proper for the trial court to [have denied] the motion." Id. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Brown, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984).
The elements of breaking and entering a motor vehicle are set out in N.C. Gen. Stat. § 14-56, which provides, in relevant part:
If any person, with intent to commit any felony or larceny therein, breaks or enters any . . . motor vehicle . . . containing any goods, wares, freight, or other thing of value . . . that person is guilty of a Class I felony.
N.C. Gen. Stat. § 14-56 (2005). Further, we have held that "the language of G.S. 14-56 does not require the actual larceny of anything in order to convict of felonious breaking or entering." State v. Kirkpatrick, 34 N.C. App. 452, 455, 238 S.E.2d 615, 617(1977). "It is the breaking or entering with intent to commit larceny that is proscribed." Id. In addition, with respect to the element that the vehicle broken or entered must contain "goods, wares, freight, or other thing of value," we have held that evidence of items of even trivial value is satisfactory. See State v. Goodman, 71 N.C. App. 343, 349-50, 322 S.E.2d 408, 413 (1984).
Defendant contends that the State presented insufficient evidence that there was a breaking or entry into Chapman's car, that the car contained "things of value," or that defendant acted in concert with the other man who was observed standing on the passenger's side of the vehicle. We disagree.
Here, the State presented evidence that Chapman had left the car locked, that the car alarm was triggered, that one of the triggers of the alarm was the opening of a door, and that after the incident the car doors were unlocked, the stereo faceplate had been detached, and the glove compartment was open. We conclude that this evidence is sufficient on the element of breaking or entering.
Defendant also contends that there was insufficient evidence to prove that the car contained "things of value." However, Chapman testified that the car contained a car stereo with a detachable faceplate and books. Such items are sufficient to constitute "things of value" for the purposes of N.C. Gen. Stat. § 14-56. See Goodman, 71 N.C. App. at 349-50, 322 S.E.2d at 413 (addressing a registration card and hubcap key); see also Kirkpatrick, 34 N.C. App. at 456, 238 S.E.2d at 618 (addressing aC.B. radio); State v. Quick, 20 N.C. App. 589, 591, 202 S.E.2d 299, 301 (1974) (addressing papers, cigarettes, and a shoe bag).
Finally, defendant asserts that the evidence was insufficient to show that defendant acted in concert with the unidentified man. Again, we disagree.
A defendant can be found guilty of a crime under a theory of acting in concert where "he is present at the scene and acting together with another or others pursuant to a common plan or purpose to commit the crime." State v. Taylor, 337 N.C. 597, 608, 447 S.E.2d 360, 367 (1994). Here, Chapman testified that he saw both men looking into his car, that they both walked away together as he approached them, that they walked at a quick pace as Chapman followed them on foot, and that when he caught up to the two men and confronted them again, defendant slapped him in the face. This evidence is sufficient to demonstrate that defendant was acting in concert with the unidentified accomplice. In sum, we conclude that the State presented sufficient evidence to submit the charge of breaking and entering to the jury.
In his next assignment of error, defendant contends that the trial court inappropriately questioned a witness outside of the jury's presence and then permitted the State to reopen its direct examination of the witness on the subject. Specifically, defendant contends that the trial court's questioning inappropriately influenced Chapman's testimony resulting in a change to his testimony when the State was permitted to later re-examine Chapman. Pursuant to North Carolina Rule of Evidence 614(b), "[t]he court may interrogate witnesses, whether called by itself or by a party." N.C. Gen. Stat. § 8C, Rule 614(b) (2005). "The court may also question a witness for the purpose of clarifying a witness' testimony and for promoting a better understanding of it." State v. Chandler, 100 N.C. App. 706, 710, 398 S.E.2d 337, 339 (1990) (citing State v. Whittington, 318 N.C. 114, 347 S.E.2d 403 (1986)). "Such examination must be conducted with care and in a manner which avoids prejudice to either party." Id. (citing State v. Colson, 274 N.C. 295, 163 S.E.2d 376 (1968)).
During the State's direct examination of Chapman, the State elicited equivocal responses as to whether he saw the passenger door being closed as he approached. When asked to describe what the two men were doing near his car, Chapman stated that they were "[a]ppearing [sic] in the windows maybe shutting doors." (Emphasis added). He later stated that it "looked like he was shutting a door" and when the State asked him if he could see whether or not the door was open, Chapman stated that he "assumed it was because the alarm was going off . . . ." Later in his testimony, Chapman again agreed that "it appeared that someone was shutting [the] door." (Emphasis added).
After the State concluded its direct examination of Chapman, the trial court excused the jury and proceeded to question Chapman as follows:
The Court: All right. Let the record show I've sent the jury out because I wanted to ask the witness a couple of questions for my understanding, and I didn't want to do this in front of the jury.
Examination by the Court:
Q. Mr. Chapman, did I understand you to say that on the date in question, August 8th, 2005, that you were coming back to your car and you heard an alarm, and you recognized that to be the alarm on your car?
A. Correct.
Q. And that when you could see, you saw two black males, I believe you said hovering over your vehicle?
A. Correct.
Q. And at that point did you see anyone in your vehicle?
A. I did not.
Q. And that you indicated, at least for my clarification, that it appeared that the passenger door was opened?
A. I thought so. That's the only way my alarm goes off is if the lock is popped or if the door is opened.
Q. Well, it's important for my clarification, did you or did you not see the passenger door open?
A. I believe I saw it being shut.
Q. All right, then it appeared that someone was shutting your passenger door?
A. Yes, sir.
Q., [sic] did I understand you to say that there was one individual at the driver's door or driver's side and one at the passenger side?
A. Right.
Q. And did I understand you to say that the defendant, Mr. Britt, was the one at the driver's side?
A. I believe so, yes.
It is clear from this colloquy that the trial court was attempting to clarify Chapman's prior responses regarding whether he saw the passenger door open, saw it being closed, or had merely assumed it had been opened because his car alarm was sounding. Not only was this examination of Chapman a careful and appropriate attempt by the trial court to clarify an important fact in this case, it was not done in the presence of the jury. Consequently, defendant's challenge of the trial court's questioning is without merit.
Nevertheless, defendant continues his argument by asserting that following the trial court's examination, the State was impermissibly allowed to reopen its direct examination of Chapman during which the State again asked Chapman, "Did you ever see any doors open or being shut on the passenger side?" Chapman responded "Yes." Defendant characterizes this response as different from Chapman's earlier answers, thereby indicating the trial court's inappropriate influence on Chapman's testimony. We disagree.
As an initial matter, defendant has failed to properly preserve this issue for appellate review. Defendant failed to object to either the State's re-opening of direct examination or to the State's submitting the question to Chapman after it had already been answered in the presence of the jury. By failing to object at trial, defendant has waived our review of this issue. See N.C.R. App. P. 10(b)(1) (2007). Notwithstanding any waiver, defendant asserts that no objection was necessary because the trial court committed "plain error" in allowing the State to continue questioning on the issue. Under the plain error rule, a defendant must demonstrate "'not only that there was error, but that absent the error, the jury probably would have reached a different result.'" State v. Roseboro, 351 N.C. 536, 553, 528 S.E.2d 1, 12 (quoting State v. Jordan, 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993)) .
As we concluded above, the trial court appropriately questioned Chapman for the purpose of clarifying his testimony. In addition, by conducting its examination outside the presence of the jury, and then permitting the State, rather than the trial court, to revisit the issue when the jury returned, the trial court eliminated any potential prejudice that might have resulted from the trial court performing the questioning. Consequently, we find no error in the trial court's actions.
Even were we to find error, we would nevertheless additionally conclude that there is no probability that the jury would have reached a different verdict. Chapman's responses, on the whole, consistent in communicating that he believed that he saw the car door being shut as he approached. Moreover, defendant was later afforded an opportunity to again clarify Chapman's testimony on cross-examination. Defense counsel asked Chapman, "[d]id you ever see a car door open?" to which Chapman responded, "I believe the passenger side. It was just being shut as I approached the car." We find that this response is consistent with Chapman's earlier responses during the State's initial direct examination, thereby undermining defendant's assertion that the trial court's questioning of Chapman influenced his later testimony.
Moreover, as discussed above, there was additional sufficient evidence from which the jury could have determined that the door had been opened, including, for example, the removal of the stereo faceplate and the opening of the glove box. Consequently, defendant has failed to demonstrate either error or plain error.
No error.
Judges WYNN and BRYANT concur.
Report per Rule 30(e).