STATE OF NORTH CAROLINA v. RONALD EDWARD FREELAND

No. 249A84

(Filed 18 February 1986)

1. **Criminal Law § 89.1— mother of rape victim—character evidence improperly admitted—no prejudice**

Though the trial court in a rape case erred in allowing the seven-year-old victim's mother to give opinion testimony vouching for the veracity of her daughter and to testify to specific acts by the victim as indicative of her character, defendant failed to show that there was a reasonable possibility that, had the evidence been excluded, a different result would have been reached at trial, and admission of the evidence was therefore not prejudicial, since the victim gave a detailed and accurate description of defendant, corroborated by her father; she gave clear and consistent testimony at trial; and defendant failed to impeach her credibility in any way.

---

State v. Freeland

---

2. **Constitutional Law § 76; Criminal Law § 48.1— evidence of defendant's post-arrest silence—prejudice cured by instruction**

   The trial court's curative instruction was sufficient to cure the prejudicial effect of testimony by a detective that defendant requested a lawyer and asserted his right to silence after being arrested and informed of his constitutional rights, since the prosecutor was not attempting to capitalize on defendant's silence or his request for counsel when the detective made his statements but was instead merely attempting to elicit from the detective the facts and circumstances surrounding a tape-recorded interview the detective had had with the victim on the night of the assault; immediately after the statements concerning defendant's exercise of his constitutional rights, defendant's counsel objected and moved to strike; the trial court immediately sustained defendant's objection and instructed the jury to disregard the statements and not to consider them in their deliberations; the jurors indicated by raising their hands that they could follow the instruction; and the evidence of defendant's guilt was very strong.

3. **Constitutional Law § 34; Criminal Law § 26.5— conviction for first degree kidnapping and first degree rape—double jeopardy**

   Defendant was placed in double jeopardy by being convicted of first degree kidnapping based on removal of the victim to facilitate a sexual assault as well as being convicted of first degree rape and first degree sexual offense.

4. **Constitutional Law § 34; Criminal Law § 26.5— same conduct violating two statutes—double jeopardy—amount of punishment—intent of legislature**

   When a defendant is tried in a single trial for violations of two statutes which punish the same conduct, the amount of punishment allowable under the double jeopardy clause of the Federal Constitution and the law of the land clause of the N.C. Constitution is determined by the intent of the legislature; therefore, if the legislature has specifically authorized cumulative punishment for the same conduct under two statutes, the prosecutor may seek and the trial court may impose cumulative punishment under such statutes in a single trial, but if cumulative punishment is not so authorized, a defendant may be punished under only one statute.

   Justices EXUM, MARTIN and FRYE concur in the result.

APPEAL by defendant as a matter of right pursuant to N.C.G.S. § 7A-27(a) from the judgments entered by *Hobgood, J.,* at the 6 February 1984 Criminal Session of ALAMANCE County Superior Court. Judgments entered 16 February 1984.

Defendant was convicted of first degree rape, first degree sexual offense and first degree kidnapping. Following the sentencing hearing Judge Hobgood sentenced defendant to terms of life imprisonment for first degree rape and first degree sexual offense, the sentences to run concurrently, and to a thirty-year term of imprisonment for first degree kidnapping, that sentence to run consecutively with the life sentences.

---

State v. Freeland

---

The State's evidence tended to show that defendant approached Elizabeth Boyd, the seven year old victim, while she was playing near her home. Defendant convinced her to accompany him to a nearby wooded area where he inserted his finger in her vagina. Subsequent to this act he raped her. Semen, consistent with defendant's blood type, was found on the victim's underwear.

Elizabeth told her mother, Ellen Boyd, that her assailant was a white male who was wearing a dark blue baseball cap and T-shirt, each with white lettering, a pair of blue jeans and a pair of blue and white Nike tennis shoes. She also recalled that he was carrying a radio-tape player. Wilson Boyd, Elizabeth's father, had seen defendant walking on the road in front of his house prior to the assault. Steve Johnson, who lived near the Boyd residence, saw an individual matching Elizabeth's description of her assailant cut through his yard shortly after the assault had taken place. At trial in defendant's presence Johnson stated that he did not see that individual in the courtroom.

After Elizabeth recounted what had happened to her Mrs. Boyd called the Sheriff's Department, told them her daughter had been raped, and described the assailant. Shortly after the Sheriff's Department received this description of the assailant, defendant, who matched the description, was spotted by Lieutenant Perkins along Highway 87 and stopped. Lieutenant Perkins asked that defendant accompany him to the Boyd residence to clear up a certain matter and defendant agreed. Upon their arrival Elizabeth was brought outside and identified defendant as her assailant. He was then arrested.

Defendant took the stand in his own behalf and gave alibi testimony which was corroborated by several witnesses. He denied any knowledge of the assault on Elizabeth.

*Lacy H. Thornburg, Attorney General, by David S. Crump, Special Deputy Attorney General, for the State.*

*Adam Stein, Appellate Defender, by David W. Dorey, Assistant Appellate Defender, for defendant-appellant.*

BRANCH, Chief Justice.

Defendant assigns as error the admission of certain opinion and character testimony by Mrs. Boyd offered to bolster the credibility of Elizabeth. Defendant further challenges the trial court's failure to declare a mistrial following testimony by Detective Ron Overman that defendant asserted his right to silence following his arrest. We hold that the trial court ruled correctly on the second issue and find no prejudicial error in the first issue. Defendant also assigns as error the entry of judgment on the charge of first degree kidnapping based on a sexual assault when judgment had already been entered against him for the two sexual assaults he committed. We agree and remand for a new sentencing hearing.

Because this case was tried before 1 July 1984 the North Carolina Rules of Evidence will not be addressed.

I

[1]  Defendant first argues that the trial court impermissibly allowed Elizabeth's mother to give opinion testimony vouching for the veracity of her daughter and to testify to specific acts by Elizabeth as indicative of her character.

Following cross-examination of Elizabeth during which she admitted that she sometimes told lies, the State called Mrs. Boyd to the stand. She testified that Elizabeth had indeed told stories or lies in the past. The prosecution then asked Mrs. Boyd what she would do in those instances and she testified as follows:

A. I can look at her face and tell whether she's telling me the truth or not. And I'll look down at her, 'Now, Beth, are you sure that's right?'

And then she tells me the truth.

MR. MOSELEY: I object; move to strike.

THE COURT: Overruled; denied.

Q. (Mr. Hunt) What has been your experience as Beth's mother regarding fantasizing?

A. Beth has never, you know—

MR. MOSELEY: I object.

THE COURT: Overruled.

THE WITNESS: She's never — she knows the difference between reality —

MR. MOSELEY: Object.

THE WITNESS: — and fantasy.

THE COURT: Overruled.

THE WITNESS: Now, when she's playing, she'll play with her dolls and she will play school, for instance. And she'll be the teacher, and she'll be the students and all. But that is a play-type situation. She knows who she is.

MR. MOSELEY: Object. Move to strike.

THE COURT: Overruled; denied.

We agree with defendant that this evidence was improperly admitted but hold that its admission was harmless error.

It is the general rule in this jurisdiction that an impeaching or sustaining character witness "may testify concerning a person's character only after he qualifies himself by affirmatively indicating that he is familiar with the person's general character and reputation." *State v. Cox*, 303 N.C. 75, 80, 277 S.E. 2d 376, 380 (1981). The witness's opinion of the character of another is inadmissible, *State v. Brown*, 306 N.C. 151, 175, 293 S.E. 2d 569, 585, *cert. denied*, 459 U.S. 1080, 74 L.Ed. 2d 642 (1982), as is his testimony concerning specific acts indicative of character, *State v. Denny*, 294 N.C. 294, 298, 240 S.E. 2d 437, 439 (1978). In the instant case the trial court erred in allowing Mrs. Boyd to refer to specific acts and occurrences tending to show that Elizabeth has a good character for truthfulness and can distinguish fantasy from reality.

Errors relating to rights that do not arise under the Federal Constitution are prejudicial "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached" at trial. N.C.G.S. § 15A-1443(a) (1977) (codifying our rule set forth in *State v. Turner*, 268 N.C. 225, 150 S.E. 2d 406 (1966)). In this case we hold that there is no reasonable possibility that a different result would have been reached at trial had the error not occurred. The substance of the

evidence in question was that Mrs. Boyd could tell when Elizabeth was lying, that when confronted by her mother Elizabeth would tell the truth and that she could distinguish between reality and fantasy. At no point did Mrs. Boyd express an opinion that her daughter was telling the truth when she testified at trial. It is important to note that the jury would naturally assume that Mrs. Boyd was prejudiced in favor of her daughter and believed that her daughter was telling the truth. Any testimony by Mrs. Boyd indicating that it was her opinion that Elizabeth was telling the truth would not materially enhance the effect of her character testimony.

Defendant's reliance on *State v. Coble*, 63 N.C. App. 537, 306 S.E. 2d 120 (1983), is misplaced. In *Coble*, a character witness testified over objection that in her opinion the State's sole eyewitness to the crime was a truthful person. *Id.* at 541, 306 S.E. 2d at 122. The Court of Appeals held that admission of this improper testimony could not be considered harmless when combined with the fact that the defendant was effectively precluded from presenting his defense by the trial court's erroneous exclusion of evidence favorable to him. *Id.* at 541-42, 306 S.E. 2d at 123. In the instant case defendant was able to fully develop his defense of alibi.

In view of the victim's detailed and accurate description of defendant, corroborated by her father, her clear and consistent testimony at trial and defendant's failure to impeach her credibility in any meaningful way, we hold that defendant has failed to show that there is a reasonable possibility that had Mrs. Boyd's testimony been excluded a different result would have been reached at trial. Therefore, its admission into evidence was harmless error.

II

[2] Defendant next assigns as error the trial court's failure to declare a mistrial following the testimony by Detective Overman that defendant requested a lawyer and asserted his right to silence after being arrested and informed of his constitutional rights. Use of a defendant's exercise of his right to silence after he has been arrested and informed of his constitutional rights for impeachment purposes is a violation of the due process clause of the fourteenth amendment. *Doyle v. Ohio*, 426 U.S. 610, 619, 49

L.Ed. 2d 91, 98 (1976). The prosecution may use a defendant's *pre-arrest* silence for impeachment purposes. *Jenkins v. Anderson,* 447 U.S. 231, 239-40, 65 L.Ed. 2d 86, 95-96 (1980). Courts have also condemned reference by the prosecution to an accused's exercise of his right to counsel. *See United States v. Daoud,* 741 F. 2d 478 (1st Cir. 1984). Under the facts and circumstances of this case we hold that the trial court's curative instruction was sufficient to cure the prejudicial effect of Detective Overman's testimony.

"Every violation of a constitutional right is not prejudicial. Some constitutional errors are deemed harmless in the setting of a particular case, not requiring the automatic reversal of a conviction, where the appellate court can declare a belief that it was harmless beyond a reasonable doubt." *State v. Taylor,* 280 N.C. 273, 280, 185 S.E. 2d 677, 682 (1972); N.C.G.S. § 15A-1443(b) (1977).

In contrast with the cases relied on by defendant and many of those that our own research has discovered, the prosecutor in this case was not attempting to capitalize on defendant's silence or his request for counsel. *See Doyle v. Ohio,* 426 U.S. 610, 49 L.Ed. 2d 91; *State v. Lane,* 301 N.C. 382, 271 S.E. 2d 273 (1980); *United States v. McDonald,* 620 F. 2d 559 (5th Cir. 1980); *State v. Castor,* 285 N.C. 286, 204 S.E. 2d 848 (1974). Rather, the prosecutor simply asked Detective Overman whom he had seen when he went to the Alamance County Sheriff's Department on the night of the offense. At that point the detective made the improper statement indicating that defendant had asserted his right to counsel and to remain silent. In his next question the prosecutor asked specifically if the detective had talked with Elizabeth Boyd that night and what Elizabeth had told him. It is clear that the prosecutor was merely attempting to elicit from Detective Overman the facts and circumstances surrounding the tape recorded interview the Detective had had with Elizabeth on the night of the assault.

Immediately after Detective Overman made the statement concerning defendant's exercise of his constitutional rights, defendant's counsel objected and moved to strike the testimony. The trial court immediately sustained defendant's objection and instructed the jury to disregard Detective Overman's statement and not to consider it in their deliberations. The jurors were then asked to raise their right hands if they could follow the instruc-

tion. All did so. In denying defendant's motion for mistrial the trial judge noted that he had been facing the jury box during Detective Overman's testimony and did not detect any change of expression or show of emotion on the faces of the jurors that might indicate that the testimony had had a significant effect on them. This is to be contrasted with the cases cited by defendant in which the evidence was admitted over objection and no curative instructions were given. *See State v. Lane,* 301 N.C. 382, 271 S.E. 2d 273; *State v. Castor,* 285 N.C. 286, 204 S.E. 2d 848.

When these factors are considered along with the very strong evidence of defendant's guilt and the presumption that the jury will follow the trial court's instructions that it disregard improperly admitted evidence, *Wands v. Cauble,* 270 N.C. 311, 154 S.E. 2d 425 (1967), we hold that Detective Overman's objectionable statement was harmless error beyond a reasonable doubt. *See United States v. Milstead,* 671 F. 2d 950 (5th Cir. 1982) (per curiam) (passing reference to defendant's retention of counsel followed by strong curative instruction not prejudicial error).

### III

[3]　In his final assignment of error defendant argues that he was placed in double jeopardy by being convicted of first degree kidnapping based on removal of the victim to facilitate a sexual assault as well as being convicted of first degree rape and first degree sexual offense. We agree.

Section 14-39(b) of the General Statutes of North Carolina provides that:

> (b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class D felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.

The language of N.C.G.S. § 14-39(b) states essential elements of the crime of first degree kidnapping. *State v. Jerrett,* 309 N.C. 239, 261, 307 S.E. 2d 339, 351 (1983).

In his final mandate during the charge on first degree kidnapping the trial judge, among other things, instructed the jury that in order to find defendant guilty it must find that he had sexually assaulted Elizabeth Boyd. The only sexual assaults committed by defendant against Elizabeth were the rape and sexual offense for which he was separately convicted. Therefore, in finding defendant guilty of first degree kidnapping the jury must have relied on the rape or sexual offense to satisfy the sexual assault element. As a result defendant was unconstitutionally subjected to double punishment under statutes proscribing the same conduct. *See State v. Price*, 313 N.C. 297, 327 S.E. 2d 863 (1985) (proof of the rape not necessary to satisfy sexual assault element because defendant committed a separate sexual assault for which he was not prosecuted).

[4]    The general rule is that the double jeopardy clause of the Federal Constitution protects an individual " 'from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.' " *Missouri v. Hunter*, 459 U.S. 359, 365, 74 L.Ed. 2d 535, 542 (1983) (quoting *Green v. United States*, 355 U.S. 184, 187, 2 L.Ed. 2d 199, 204 (1957) ). When a defendant is tried in a single trial for violations of two statutes that punish the same conduct the amount of punishment allowable under the double jeopardy clause of the Federal Constitution and the law of the land clause of our State Constitution is determined by the intent of the legislature. *State v. Gardner*, 315 N.C. 444, 340 S.E. 2d 701 (1986). If the legislature has specifically authorized cumulative punishment for the same conduct under two statutes " 'the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.' " *Id.* at 460-61, 340 S.E. 2d at 712 (quoting *Missouri v. Hunter*, 459 U.S. at 368-69, 74 L.Ed. 2d at 544). If cumulative punishment is not so authorized, a defendant may only be punished under one statute. *Id.* Since defendant's conviction of the rape or the sexual offense is a necessary element of first degree kidnapping in this case, the trial judge erred in sentencing defendant for all three crimes unless the legislature specifically authorized cumulative punishment. Since we find nothing in the pertinent statutes explicitly authorizing cumulative punishment, we must apply the *Gardner* test for determining legislative intent by examining the subject,

language and history of the statutes. *Gardner*, 315 N.C. at 461, 340 S.E. 2d at 712. Because N.C.G.S. § 14-27.2 and N.C.G.S. § 14-27.4 do not refer to kidnapping we will concentrate on N.C.G.S. § 14-39.

From 1933 to 1975 kidnapping was not divided into degrees and was punishable by life imprisonment. 1933 N.C. Sess. Laws ch. 542, § 2. In 1975 the legislature completely rewrote N.C.G.S. § 14-39. 1975 Sess. Laws ch. 843, § 1. Subsection (b) of the revised statute set the punishment for kidnapping at not less than twenty-five years imprisonment and not more than life imprisonment unless the victim was released by the defendant in a safe place and had not been sexually assaulted or seriously injured. N.C.G.S. § 14-39 (1975) (now amended). If that was the case, punishment was set at not more than twenty-five years imprisonment, or a fine of not more than ten thousand dollars, or both. *Id.* Prior to the Supreme Court's ruling in *Missouri v. Hunter*, 459 U.S. 359, 74 L.Ed. 2d 535, we held that a defendant could be given the maximum sentence allowed for kidnapping based on the fact that the victim was sexually assaulted as well as being separately punished for the rape that was used to establish that a sexual assault occurred. *State v. Williams*, 295 N.C. 655, 664-69, 249 S.E. 2d 709, 716-19 (1978). *See State v. Banks*, 295 N.C. 399, 405-07, 245 S.E. 2d 743, 748-49 (1978). This decision was based on our determination that the then existing version of N.C.G.S. § 14-39 did not divide kidnapping into two degrees. *Williams*, 295 N.C. at 664-65, 249 S.E. 2d at 716-17. Rather, the absence of sexual assault or serious injury to the victim combined with the release of the victim in a safe place were mitigating circumstances which resulted in a lesser sentence. *Id.* at 666-69, 249 S.E. 2d at 717-19.

The fact that kidnapping was not divided into two degrees in 1978 was significant because of our opinion in *State v. Midyette*, 270 N.C. 229, 154 S.E. 2d 66 (1967), which we relied on in *State v. Williams*, 295 N.C. 655, 249 S.E. 2d 709. The rule of *Midyette* is as follows: When one is convicted and sentenced for an offense he may "not thereafter be lawfully indicted, convicted and sentenced a second time for that offense, or for any other offense *of which it, in its entirety, is an essential element.*" *Midyette*, 270 N.C. 229, 233, 154 S.E. 2d 66, 70 (emphasis added). "What the State cannot do by separate indictments returned successively and tried successively, it cannot do by separate indictments returned

simultaneously and consolidated for simultaneous trial." *Id.* at 234, 154 S.E. 2d at 70. In *Midyette* we held that a defendant convicted of assault with a deadly weapon could not also be convicted of resisting a public officer when it was alleged that the assault was the means by which the public officer was resisted. *Id.* In *State v. Williams* we concluded that the rule of *Midyette* did not apply because a sexual assault on the victim was not an element of the single offense of kidnapping established by N.C.G.S. § 14-39 or an aggravating factor that would result in a greater sentence. 295 N.C. at 669, 249 S.E. 2d at 719.

*State v. Williams* was filed 28 November 1978. The legislature passed the present version of N.C.G.S. § 14-39 on 4 June 1979. 1979 N.C. Sess. Laws ch. 760, § 5. This new version of N.C.G.S. § 14-39(b) divided kidnapping into two degrees and made the commission of a sexual assault on the victim an element of the crime of first degree kidnapping. *See State v. Jerrett*, 309 N.C. 239, 307 S.E. 2d 339. The *Williams* decision had made it clear that under a kidnapping statute drafted in this manner a defendant could not be convicted of both first degree kidnapping and a sexual assault that raised the kidnapping to first degree. Therefore, we can only conclude that in revising the statute the legislature did not intend that defendants be punished for both the first degree kidnapping and the underlying sexual assault. In reaching this conclusion we find it important that *Williams* and *State v. Banks* were the first decisions of this Court to deal with the issue of double punishment under former N.C.G.S. § 14-39 and that following our opinion in those cases the legislature promptly revised the statute.

We recognize that by adopting the United States Supreme Court's decision in *Missouri v. Hunter*, 459 U.S. 359, 74 L.Ed. 2d 535, *State v. Gardner*, 315 N.C. 444, 340 S.E. 2d 701, has overruled that portion of the holding of *State v. Midyette*, 270 N.C. 229, 154 S.E. 2d 66, which stated that what the State may not do by separate indictments returned successively and tried successively, it may not do by separate indictments returned simultaneously and consolidated for simultaneous trial. However, *Williams* and *Midyette* were the law of this State in 1979, and in determining the intent of the legislature when it revised N.C.G.S. § 14-39(b) in 1979, we must assume that the legislature was aware of this fact. Therefore, defendant was erroneously subjected to double punish-

ment, and it will be necessary to remand this case to the trial court for a new sentencing hearing.

The trial court may arrest judgment on the first degree kidnapping conviction and resentence defendant for second degree kidnapping or it may arrest judgment on one of the sexual assault convictions.

For the reasons stated this case is remanded to the trial court for a new sentencing hearing.

Remanded for new sentencing hearing.

Justices EXUM, MARTIN and FRYE concur in the result.