STATE OF NORTH CAROLINA
v.
LARRY DEAN MINTZ
No. COA08-1075
Court of Appeals of North Carolina.
Filed May 5, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Jane Rankin Thompson, for the State.
Brian Michael Aus for defendant-appellant.
BRYANT, Judge.
Defendant appeals from judgment and commitment entered 10 March 2008 on two counts of first-degree sex offense with a child and one count of indecent liberties with a child. For the reasons stated herein, we find no error and affirm the judgment of the trial court.
Willa[1], Helen's mother, moved in with defendant in 1999 or 2000, and the couple lived in a single wide trailer located at 394 Westwood Circle, Waynesville, North Carolina. After "a couple of years," they moved to Tahoe Drive, also in Waynesville. She and defendant broke up mid-June 2003. Defendant was thirty-fours years old at the time of trial.
During their time together, Willa worked from 6:30 p.m. to 2:00 a.m. Tuesday through Saturday, and while she worked, defendant was at home with Helen. Willa testified that at the time she and defendant were dating, she felt defendant was a good father to his children. But, when asked if her opinion of defendant had changed, Willa testified, "Absolutely. . . . I feel like that [defendant] absolutely did this to my little girl."
Helen was born in 1991 and in 2008, at the time of trial, was sixteen years old. When she and her mother lived on Westwood Circle, she had a girlfriend named Rachel who was in Helen's second grade class. Rachel spent the night with Helen almost every weekend.
Helen testified that the last time Rachel slept over, sometime after Helen's birthday, she and Rachel camped out in a tent in Helen's front yard. That night, defendant entered the tent, and while Rachel was lying on her stomach, defendant began to rub her.
Helen: He was massaging her neck and just going down to her butt and stuff.
. . .
Counsel: When he was touching  well, you say he started at her shoulders and worked down to her butt. Was his hand over or under her clothes?
Helen: I can't remember.
. . .
Counsel: Did he touch you in the tent?
Helen: Not in the tent.
. . .
Counsel: Did you and Rachel talk at all about what he had done out there while you were in the tent?
Helen: No
Counsel: When you left the tent, where did you go?
Helen: Inside.
Counsel: And when you went inside, what happened?
Helen: We were still on the couch, and he turned the music on and started dancing.
. . .
Counsel: And did he have his clothes on?
Helen He was taking them off.
. . .
Counsel: Was there anything in between him and where you were sitting on the couch to where you couldn't see what he was doing, or could you see what he was doing?
Helen: We could see what he was doing.
Counsel: What clothes did he take off?
Helen: His pants.
. . .
Counsel: When he took his pants off, could you see his penis?
Helen: Yeah.
Helen further testified that one evening after Rachel's last sleepover Helen went to bed early because she was not feeling well. Helen: I went to bed about 8:30, and he came in there and pulled down my pants and underwear.
Counsel: Where was this at?
Helen: In my room.
Counsel: At Westwood Circle?
Helen: Yes.
Counsel: Was there anyone else there?
Helen: No, not that I can remember.
. . .
Counsel: Do you know where your mom was?
Helen: Work.
Counsel: Where was your mom on the time before when Rachel was there?
Helen: She was at work.
Counsel: So this time you were there by yourself in your bed he came in and pulled your pants down. What happened after that?
Helen: He just started using his finger.
Counsel: How did he use his finger?
Helen: Just in my private.
Counsel: [W]hen you say private, what do you mean.
Helen: Vagina.
Counsel: When he put his finger in your vagina, what was he doing?
Helen: He was just going in and out.
On direct-examination, the State asked Helen whether she remembered talking to Detective Heidi VanDine. Helen recalled speaking to the detective on two occasions.
Counsel: [Helen], I'm going to hand you what I have marked as State's Exhibit 3 with this sticker up here, and I want you to take a look at that and tell me if you recognize what that document is?
. . .
And what is that, State's Exhibit 3?
Helen: The statement I gave.
Counsel: Is that the one that you gave to Detective VanDine?
Helen: Yes.
. . .
Counsel: I want you to read through that and see if that refreshes your recollection about what happened to you these occasions.
. . .
Does it help refresh your memory as to what you told the detective about what happened?
Helen: Yes.
Counsel: And is what you told the detective true?
Helen: Yes.
Counsel: Your Honor, the State would move the introduction of State's Exhibit 3.
Court: Let it be received into evidence.
In the following testimony, Helen described how defendant molested Rachel in Helen's bedroom in much the same way he molested Helen. Rachel also testified.
Defendant did not offer any evidence.
After the close of the evidence, the jury returned verdicts of guilty on two counts of first-degree sex offense with a child and two counts of indecent liberties with a child. The trial court arrested judgment on one count of indecent liberties with a child and entered judgment on the remaining offenses. Defendant was sentenced to two consecutive terms of 300 to 369 months in the custody of the North Carolina Department of Correction. Defendant appeals.
On appeal, defendant raises the following three arguments: The trial court committed plain error by allowing (I) Willa to give her opinion that defendant committed crimes against Helen; (II) Helen's statements to Det. VanDine to be published to the jury; and (III) Det. VanDine to testify that she ran defendant's criminal history.

Standard of Review
Under our North Carolina Rules of Appellate Procedure,
In criminal cases, a question which was not preserved by objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is specifically and distinctly contended to amount to plain error.
N.C. R. App. P. 10(c)(4) (2008).
[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.
State v. Cummings, 361 N.C. 438, 470, 648 S.E.2d 788, 807 (2007) (citation omitted) (original emphasis).

I
Defendant argues the trial court committed plain error by allowing Willa to give her opinion that defendant "absolutely did this to my little girl." Defendant argues that Willa's testimony was not based on any rational perception and, thus, was not helpful to the jury. Defendant further argues that Willa bolstered the credibility of Helen to an extent which "tilted the scales" in the eyes of the jury and resulted in defendant's conviction. We disagree.
In State v. Freeland, 316 N.C. 13, 340 S.E.2d 35 (1986), the defendant was charged with first-degree kidnaping predicated on sexual assault. At trial, the victim's mother testified over objection that she could tell when her daughter was telling the truth and that her daughter knew the difference between fantasy and reality. Id. at 16-17, 340 S.E.2d at 37. Our Supreme Court noted that at no point did the mother express an opinion as to whether her daughter was telling the truth during her testimony. Further, "the jury would naturally assume that [the mother] was prejudiced in favor of her daughter and believed that her daughter was telling the truth." Id. at 18, 340 S.E.2d at 37. The Court held that where the victim gave a detailed and accurate description of the defendant, corroborated by her father, her testimony at trial was consistent, and the defendant failed to impeach her credibility in any meaningful way  there was no reasonable possibility that the exclusion of her mother's testimony would have rendered a different result. Therefore, the admission of the mother's testimony was harmless error.
Here, on cross-examination, Willa testified as follows:
Defense: [D]id you not at times in the last five years or so describe [defendant] as a good father?
Willa: When I was with [defendant], he was a decedent [sic] father to his boys.
Immediately following this, on re-direct, Willa testified as follows:
Counsel: [Willa], has that opinion about [defendant] changed now?
Willa: Absolutely.
. . .
I feel like that [defendant] absolutely did this to my little girl.
Willa failed to state why she felt that defendant "absolutely did this to [Helen]"; therefore, Willa's comment could have meant that she believed her daughter, or on the other hand, it could have meant she knew defendant as capable of such acts. But, regardless, both Helen and Rachel gave detailed accounts of defendant's actions, and defendant failed to impeach either witness's credibility in any meaningful way. We hold there was no reasonable possibility that the exclusion of Willa's testimony that she "feel[s] like that [defendant] absolutely did this to [her] little girl" would have rendered a different result. Accordingly, defendant's assignment of error is overruled.

II
Next, defendant argues the trial court committed plain error by allowing Helen's statement to law enforcement to be published to the jury. We disagree.
In order to be corroborative and therefore properly admissible, the prior statement of the witness need not merely relate to specific facts brought out in the witness's testimony at trial, so long as the prior statement in fact tends to add weight or credibility to such testimony. Our prior statements are disapproved to the extent that they indicate that additional or "new" information, contained in the witness's prior statement but not referred to in his trial testimony, may never be admitted as corroborative evidence. However, the witness's prior statements as to facts not referred to in his trial testimony and not tending to add weight or credibility to it are not admissible as corroborative evidence. Additionally, the witness's prior contradictory statements may not be admitted under the guise of corroborating his testimony.
State v. Ramey, 318 N.C. 457, 469, 349 S.E.2d 566, 573-74 (1986) (internal citations omitted). In her statement to law enforcement, Helen recounted that defendant entered her bedroom, and that she observed defendant speak to Rachel, pull down Rachel's pajama pants and insert his finger into her vagina. Helen had not described this particular act during her trial testimony.
Where Helen's statement to the police included evidence that defendant inserted his finger into Rachel's vagina, such evidence had not previously been proffered and tended to indicate additional or "new" information. Furthermore, such evidence supported the charge of first-degree sex offense as it pertained to Rachel. See N.C. Gen. Stat. § 14-27.4(a)(1) (first-degree sexual offense); State v. DeLeonardo, 315 N.C. 762, 764, 340 S.E.2d 350, 353 (1986) ("The term `sexual act' as used in this statute means cunnilingus, fellatio, analingus, or anal intercourse. It also means the penetration, however slight, by any object into the genital or anal opening of another person's body."). Therefore, it was error for the trial court to admit that portion of Helen's prior statement to the jury. However, Rachel also testified to acts that supported the charge of first-degree sex offense.
Rachel testified that at the time of trial it had been almost six years since she had spoken to Helen, and that when she was in the second grade, she would often spend the night at Helen's house. Rachel recalled that on her last night there, Helen was playing on her Playstation game console while Rachel sat on a couch. Defendant sat next to Rachel and began to rub her back. Defendant put one hand down the front of Rachel's pants; Rachel began to cry, got up, and, along with Helen, ran into a bedroom; but the girls returned when defendant called them back. Defendant told Rachel to remove her pants and then he rubbed her vagina. Later that evening, defendant instructed the girls to remove their clothes and dance in front of him. They danced for ten to twenty minutes. Rachel testified that defendant asked the girls to identify what kind of underwear he was wearing and that he removed his pants to reveal he was not wearing underwear and exposed his penis. The girls left the trailer and crawled into Helen's tent in the front yard. Defendant followed. Rachel could not recall what if anything happened to Helen, but she testified that while she lay on the tent floor defendant again placed his hands down her pants and touched her vagina.
We hold that allowing Helen's statement to be published to the jury was not a fundamental error  so basic, so prejudicial, so lacking in its elements that justice could not have been done. See State v. Abraham, 338 N.C. 315, 355-56, 451 S.E.2d 131, 153 (1994) (holding there was no reasonable possibility that a different result would have ensued had a witness's presumably non corroborating prior statement been excluded where the State proffered strong and corroborative testimony from two eyewitnesses). Accordingly, we overrule this assignment of error.

III
Next, defendant argues the trial court committed plain error by permitting Detective VanDine to testify that she looked up defendant's criminal history. We disagree. Here, Detective VanDine testified that she interviewed Helen and Rachel and that each had given her a description of defendant. When asked if she, "ever [had] an occasion to meet or see [defendant,]" Det. VanDine testified that she had such an occasion.
Counsel: And did [defendant] fit the description that you had been given by the victims?
VanDine: When they told me his name, I would have run his history and I would have seen his picture and 
Defense: Objection, would have or did.
Court: Overruled. Go ahead.
VanDine: And I would have known in seeing him how his picture would have compared to him.
Defendant argues that "[i]t can be inferred that [Det.] VanDine wanted the jury to know that [defendant] had a criminal record." However, we disagree with defendant's assertion that this single statement by Det. VanDine would have tipped the scales against defendant when viewed in conjunction with the record in this case. Therefore, even presuming error in the admission of Det. VanDine's statement, we cannot say that after reviewing the record it can be said the claimed error was fundamental. Accordingly, defendant's assignment of error is overruled.
No error.
Judges ELMORE and STEELMAN concur.
Report per Rule 30(e).
NOTES
[1] Psuedonyms are used to replace the names of minors and some adults where necessary to protect the identity of minors.