IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1130

Filed 3 September 2025

Rockingham County, Nos. 22CRS351612 22CRS365328

STATE OF NORTH CAROLINA

v.

SCOTTIE THOMAS EANES

Appeal by defendant from judgment entered 7 December 2023 by Judge David L. Hall in Rockingham County Superior Court. Heard in the Court of Appeals 14 August 2025.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Justin I. Eason, for the State.*

*Appellate Defender's Office, by Glenn Gerding, and Assistant Appellate Defender Wyatt B. Osborn, for the defendant-appellant.*

TYSON, Judge.

Scottie Thomas Eanes ("Defendant") appeals from judgments entered after a jury found him guilty of first-degree sexual offense with a child, two counts of indecent liberties with a child, and solicitation of murder. We discern no prejudicial error.

## I. Background

Abbey and her older sister, Mary, attended preschool with Ben and Valery, Defendant's two youngest children. *See* N.C. R. App. P. 42(b) (pseudonyms used to

protect the identity of all minors). Valery and Mary were the same age, and Ben and Abbey were the same age. The four children befriended one another, and the two families arranged visits and playdates, which spanned across three or four years. During that time, Abbey and Mary slept over at Defendant's house "a few times."

When Abbey was seven or eight years old, she and her sister were invited for dinner and to sleepover at Defendant's house. After dinner, Abbey saw Defendant playing a card game on the computer. Abbey asked Defendant about the game. Defendant put Abbey on his lap and explained the game to her. When the card game was over, Defendant moved Abbey from his lap to the floor and began to tickle her while she was lying on her back. Defendant spread Abbey's legs and, through her clothes, rubbed his facial hair on her inner thigh and near her genital area. Defendant told Abbey not to tell anyone.

Defendant took Abbey into his bedroom, shut the door, and told her he had a "toy" for her. He put Abbey on the bed and placed a vibrator on her vaginal area outside of her clothes. Defendant told Abbey not to tell anyone about the toy because it belonged to his wife, and he explained his wife would be upset if she learned someone else had played with it.

Defendant then put away the vibrator and asked Abbey to go with him to the bathroom. Defendant had Abbey sit on her knees. He blindfolded her and told her to stick out her tongue. Defendant placed his penis on her tongue. Defendant zipped his pants and took off Abbey's blindfold. They left the bathroom, and Abbey fell asleep

in Ben's room.

Abbey's parents picked up the girls the next day. Abbey did not tell anyone about her encounters with Defendant. Abbey and Mary spent the night at Defendant's house one other time. On that occasion, Defendant gave Abbey cough syrup, even though she was not coughing or sick. Abbey quickly fell asleep on the living room couch in her clothes. Abbey woke up without any pants on, and she did not remember removing them.

The next day, Abbey and Mary told their parents Defendant had given Abbey cough syrup. An argument between Abbey's parents and the Eanes family ensued, ending the relationship between the two families. Abbey remained silent regarding her prior encounters with Defendant for some time.

During the 2019-2020 school year, when Abbey was sixteen to seventeen years old, Abbey's family hosted a Venezuelan exchange student named "Ann." Abbey and Ann became very close. Abbey confided in Ann she had been molested by Defendant, but asked Ann not to tell anyone. Ann honored Abbey's request, and Abbey remained silent about her experience until 2022, when she told her parents and asserted Defendant had "molested [her] when [she] was a child." Abbey's family contacted the Eden Police Department, and Detective Stepps investigated the allegation.

Defendant was arrested on 28 November 2022 and charged with one count of first-degree sexual offense and two counts of taking indecent liberties with a child. While awaiting trial, Defendant shared a jail cell with William Crowe ("Crowe").

Crowe was being held on a fentanyl-related illegal drug charge and could not raise and post his $250,000 bond. Soon after the two men met, Crowe sent a message to law enforcement officers and the district attorney's office asking to talk about Defendant.

The investigation was turned over to Eden Police Detective Thomas Burns ("Detective Burns"), who provided Crowe with a recording device. Crowe used the device to record a conversation between Defendant and himself during which Defendant solicited Abbey's murder.

Based on this recording, Defendant was charged with soliciting first-degree murder. The solicitation charge was joined for trial with the three pending sexual assault charges. Defendant's jury trial began on 4 December 2023.

At trial, Abbey's sister, Mary, and their mother corroborated Abbey's testimony. Ann, the Venezuelan exchange student, testified Abbey had told her in 2019 or 2020 "about a tickling game and [sex] toys that were involved and that she was molested by [Defendant]."

Beth, Defendant's oldest daughter, testified Defendant had molested her when she was around six or seven years old. She testified Defendant had molested her in a similar manner to how he had molested Abbey. Defendant had blindfolded Beth and made her "perform oral sex on him."

Jail mate Crowe testified Defendant told him "about some young girl that he – well, he put his penis in her mouth and ejaculated on her face and he said that that's

why he was in the cell." Crowe further testified Defendant had "approached [Crowe] about taking care of [Abbey] so his charge would not be there." Crowe clarified the phrase "take care of" was a euphemism for murder, and he testified Defendant offered to pay Crowe $10,000 for Abbey's murder. To corroborate this assertion, the State sought to introduce a recorded conversation between Crowe and Detective Burns. Defendant objected to the admittance of the recording because, during the conversation while Crowe was discussing the solicitation of Abbey's murder, he was also discussing Defendant's solicitation of the murder of another woman, Jamie Bullins ("Bullins"). Defendant claimed the admission of evidence of a different solicitation of murder "would be way more prejudicial than valuable." The trial court excused the jury and discussed the admissibility of the recording with counsel.

After hearing arguments from the State and from Defendant, the court concluded:

> If the media cannot be redacted, then the probative value of hearing this defendant's voice and having – or what is purported to be this defendant's voice – having the jury determine whether the circumstances are such that they believe that these words were uttered by the defendant and whether or not the defendant meant to be true. And all of the elements of the crime of solicitation to commit murder are, of course, of paramount importance. It's essentially one of the strongest pieces of evidence that could be adduced or produced in any type of prosecution.
>
> Thus, if it cannot be redacted, then the probative value outweighs the risk of unfair prejudice. I put on the record that the risk of prejudice is enormous if you are talking about killing another person unrelated to these events.

However, in this context it is not unfairly prejudicial with
a strong limiting instruction.

The court recessed for the day and reviewed the recording *in camera* to ensure

it had reached the proper outcome. The next day, outside the presence of the jury,

the court ruled:

> With respect to [the recording], I've examined it. The
> content is relevant. The mention of Ms. Bullins is
> prejudicial and is irrelevant. But it is inextricably
> intertwined, at least at one point, with the evidence
> pertaining to alleged Victim [Abbey], that being what this
> witness alleges was the price of the alleged murder.
>
> In order to resolve and in weighing the probative value
> against the risk of unfair prejudice, the only remedy and a
> remedy I am satisfied with is to give a limiting instruction
> to the jury with respect to [the recording] before it is offered
> that they may hear about a subject named Bullins.
>
> . . .
>
> [T]hat satisfies me after extensive thought and preparation
> as to the [Rule] 403 concern.

The trial court issued the following curative instruction before the recording

was played to the jury:

> You will hear mention in this [recording] of another
> subject, another person, last name of Bullins. When you
> hear that name, completely put it out of your mind. That
> person has nothing to do with the matters before you so put
> it out of your mind. Just take a mental [E]xacto knife and
> just cut that part out of the presentation and don't give it
> any thought and certainly don't give it any consideration
> during your deliberations.

Following Crowe's testimony and the introduction of the recording, Defendant

demanded to testify on his own behalf. During cross-examination, Defendant admitted he had: (1) an affair with Bullins in 2021; (2) a prior conviction for contributing to the delinquency of a minor; (3) previously pled guilty to a felony charge of indecent liberties with a child for molesting his daughter, Beth, and was then questioned about details surrounding the molestation, including the presence of Defendant's semen found in Beth's hair, though Defendant testified the semen was "from the dirty clothes pile"; and, (4) been convicted of a felony for being a sex offender present on school property. Defendant testified Abbey, Abbey's family, and Crowe were all lying, and he asserted the Eden Police Department had been "against" him for "twenty-some years." The jury found Defendant to be guilty of all four charges.

## II.    Jurisdiction

Jurisdiction lies in this Court pursuant to N.C. Gen. Stat § 7A-27(b)(1) (2023).

## III.    Mistrial *Ex Mero Motu*

Defendant contends the trial court abused its discretion by failing to grant a mistrial *ex mero motu* after admitting the recorded conversation between Crowe and Detective Burns into evidence. Defendant argues the prejudicial value of the recording substantially outweighed any probative value.

### A. Standard of Review

"The decision to grant a mistrial is within the trial court's discretion." *State v. Jaynes*, 342 N.C. 249, 280, 464 S.E.2d 448, 467 (1995). "This is particularly true where, as here, [D]efendant has not moved for a mistrial." *Id.* "An abuse of discretion

results only where a decision is manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision." *State v. Black*, 197 N.C. App. 731, 733, 678 S.E.2d 689, 691 (2009) (quotation marks omitted) (quoting *Clark v. Sanger Clinic*, 175 N.C. App. 76, 84, 623 S.E.2d 293, 299 (2005)).

## B. Analysis

Courts must determine the relevance of a piece of evidence and then weigh the probative value of a proffered piece of evidence against its prejudicial effect to determine its admissibility. N.C. Gen. Stat. § 8-C1, Rules 401, 403. Jurors are presumed to follow the court's curative instructions unless the evidence at issue is so prejudicial the jury cannot put it out of their minds. *State v. McNeill*, 371 N.C. 198, 249, 813 S.E.2d 797, 829 (2018). Curative instructions are generally presumed to cure the effects of prejudicial evidence. *See State v. Crisp*, __ N.C. App. __, __, 910 S.E.2d 726, 737 (2024).

The "nature of the evidence and the particular circumstances of the individual case" are relevant to the determination of whether an instruction to the jury can cure the prejudicial effects of incompetent evidence. *State v. Hunt*, 287 N.C. 360, 375, 215 S.E.2d 40, 49 (1975). The relevant "particular circumstances" include the timing and clarity of the curative instruction and the presence of other evidence of the defendant's guilt. *See id*. at 376, 215 S.E.2d at 50 (determining whether the evidence had "found secure lodgment in the minds of the jurors," and whether the curative instructions were "specific as to the content of the challenged questions"); and *State*

*v. Freeland*, 316 N.C. 13, 20, 340 S.E.2d 35, 39 (1986) (considering "very strong evidence of defendant's guilt" beyond the evidence in question).

While trial courts have broad discretion to weigh the probative value with the prejudicial effect of evidence, a mistrial may be required if the evidence introduced makes or renders a fair and impartial verdict impossible. *Jaynes*, 342 N.C. at 280, 464 S.E.2d at 467. To declare a mistrial because of the introduction of prejudicial evidence, the prejudice must have been so great that it "could not be cured by a curative instruction." *Crisp*, __ N.C. App.at __, 910 S.E.2d at 736.

The trial court expressly acknowledged the evidence of Defendant's solicitation of another murder was "prejudicial and [ ] irrelevant" to this case, but also acknowledged "it [wa]s inextricably intertwined, at least at one point, with the evidence." The court excused the jury and held a hearing to review and determine the admissibility of the recording. The trial court also reviewed the entirety of the recording *in camera*. After engaging in substantial dialogue with both parties, the court concluded any prejudicial effects of the recording did not substantially outweigh the probative value, so long as a curative instruction was issued.

The curative instruction was timely and specific. *See Hunt*, 287 N.C. at 376, 215 S.E.2d at 50. The jury was instructed specifically to disregard mentions of Bullins before the recording was played. There is no evidence to indicate the jury was incapable of following the court's instructions. Finally, other substantial evidence had been introduced to support Defendant's guilt independent of the recording.

*Freeland*, 316 N.C. at 20, 340 S.E.2d at 39.

Defendant contends his decision to testify was induced by the introduction of the recorded conversation and, despite the curative instruction, the recording unfairly prejudiced the jury against his case. Defendant made his own decision to testify. While the jury may not have looked favorably upon Defendant's three prior sexual offenses, a "defendant who chooses to testify waives his privilege against compulsory self-incrimination with respect to the testimony he gives." *Harrison v. U.S.*, 392 U.S. 219, 222, 20 L. Ed. 2d 1047, 1051 (1968). "[T]hat waiver is no less effective or complete because the defendant may have been motivated to take the witness stand in the first place only by reason on the strength of the lawful evidence adduced against him." *Id.*

The trial court's decision to admit the recording, prefaced with a curative instruction for the jury to disregard any mention of Bullins, rested within its discretion. *Id.* The trial court's decision not to grant a mistrial *ex mero motu* was not so manifestly unsupported by reason or so arbitrary that it could not have been the result of a reasoned decision. *Jaynes*, 342 N.C. at 280, 464 S.E.2d at 467. The trial court's decision was well within its discretion. Other overwhelming evidence of Defendant's guilt was also properly admitted. *Freeland*, 316 N.C. 1at 20, 340 S.E.2d at 39. Defendant's argument is overruled.

## IV. Conclusion

The trial court did not prejudicially err by admitting the recording with the

prior curative instruction or by failing to grant a mistrial *ex mero motu*. Defendant received a fair trial, free from prejudicial errors he preserved and argued. *It is so ordered*.

NO ERROR.

Judges ARROWOOD and CARPENTER concur.