STATE OF NORTH CAROLINA v. TOMMIE HOWARD WHITE

No. 22A82

(Filed 3 November 1982)

**1. Criminal Law §§ 66.9, 66.16— photographic identification procedures not impermissibly suggestive—independent origin of in-court identification**

In a prosecution for felonious assault, kidnapping and first degree sexual offense, two photographic lineups shown to the victim the day after the crimes occurred were not impermissibly suggestive because the victim had described his assailant as wearing a white T-shirt and defendant was the only person in

the lineups wearing a white T-shirt where the photographs were presented to the victim in separate bundles without any suggestive comment by police officers present at the time; the first lineup contained eight color photographs and the second contained ten black-and-white photographs; different photographs of defendant were used in each lineup; several of the other photographs in each lineup showed black males wearing other kinds of white shirts; and the victim immediately selected defendant's photograph at each lineup without any prompting. Furthermore, even if the photographic procedures were impermissibly suggestive, the evidence supported the trial court's determination that the victim's in-court identification of defendant was of independent origin and was therefore admissible where it showed that, before the assault, the victim had paid particular attention to his assailant through the window of an arcade because he thought the assailant might be awaiting an opportunity to steal his bicycle; the area was well-lit and the moon was full; when defendant stopped the victim in the street, there was sufficient light for the victim to identify the assailant as the man he had seen at the arcade; upon escape from the alley in which he had been assaulted, the victim immediately gave to the police a detailed account of a man fitting defendant's description; at trial, the victim pointed out the defendant without any hesitation as his assailant; and the victim testified that his in-court identification of defendant was based upon his observation of him at the crime scene rather than on the photographs he viewed.

2. **Kidnapping § 1.2— removal to commit first degree sexual offense—sufficiency of evidence**

The State's evidence in a first degree kidnapping case was sufficient to support a finding by the jury that defendant forced the victim into an alley for the purpose of committing a first degree sexual offense as alleged in the indictment rather than merely to interrogate him as to the whereabouts of a third person where it tended to show: defendant forced the victim into an alley by use of an ice pick, interrogated the victim briefly as to the whereabouts of a third person, struck him with his hands and then ordered him to remove all of his clothes; when the victim was nude, defendant made him get down on his hands and knees; while in this position, the victim heard the sound of a package tearing and then felt defendant's penis touch him; defendant committed anal intercourse on the victim twice and forced the victim to commit an oral sexual act on him; and investigators later found lubrication jelly, a condom, and a foil condom pack in the alley near the victim's trousers.

3. **Assault and Battery § 14.5— assault with deadly weapon with intent to kill inflicting serious injury—sufficiency of evidence**

The State's evidence was sufficient to support defendant's conviction of assault with a deadly weapon with intent to kill inflicting serious bodily injury where it tended to show that defendant stabbed the victim over 20 times in the neck and chest with an ice pick and then announced that he was going to kill the victim with a switchblade knife, and that the victim managed to escape only when defendant was reaching for the knife and found that his wallet was missing.

**4. Criminal Law § 89.2 — exclusion of corroborating testimony on collateral matter**

In a prosecution for felonious assault, kidnapping and first degree sexual offense, the trial court did not err in the exclusion of testimony of a defense witness offered to corroborate testimony by defendant's father on cross-examination that a third person, rather than defendant, had yelled to him that "someone just got stabbed to death over there," since the trial court had the discretion to control how far the parties could go in corroborating a witness on collateral matters at the trial. Furthermore, defendant was not prejudiced by the exclusion of such testimony.

**5. Criminal Law § 102.3 — jury argument — waiver of objection**

A defendant in a non-capital case waived objection to the prosecutor's jury argument by failing to object thereto at the trial.

ON appeal by defendant from judgments of *Rouse, J.,* entered at the 14 September 1981 Session of Superior Court, CARTERET County.

Defendant was charged in separate indictments, proper in form, with assault with a deadly weapon with intent to kill inflicting serious injury, kidnapping in the first degree, and sexual offense in the first degree. He was sentenced to life imprisonment for the sexual offense, imprisonment for forty years for kidnapping (to run concurrently with the life sentence), and imprisonment for twenty years for assault with a deadly weapon with intent to kill inflicting serious injury (to run consecutively to the life sentence).

Evidence presented by the state tended to show that on 15 July 1981, James E. LuPardus, Jr., a sixteen-year-old boy, left work at the Sanitary Restaurant at 9:30 or 10:00 p.m. and rode his bicycle to the Wheelhouse and Galley Arcade in Morehead City. Because he was concerned that his bicycle might be stolen, he watched it through a window from the inside of the arcade. The area outside was well-lit and he saw the defendant, Tommie White, staring at him through the window. Approximately an hour after he had arrived, LuPardus left the arcade on his bicycle.

When he was about a block and a half away from the arcade, a man stepped off the curb and told LuPardus to stop. The area was lighted well enough that LuPardus could recognize the man as being the person he had seen through the window at the ar-

cade. The defendant told LuPardus he was looking for a man named Larry who worked at the Sanitary Restaurant. After talking for a few minutes, the defendant pulled out an ice pick and used it to force LuPardus into a dead-end alley. There he demanded that LuPardus tell him the names of everyone who worked at the Sanitary Restaurant, apparently in an effort to track down Larry, who the defendant said had stolen some drugs from him. As LuPardus attempted to think of the names of people working at the restaurant, the defendant hit him twice across the side of his face with his hand.

The defendant then forced LuPardus to undress, to submit to anal intercourse twice, and to commit an oral sexual act on the defendant. After these assaults and while LuPardus was lying on the ground, the defendant kicked the victim's glasses off and began striking him in the neck and chest with the ice pick. He told LuPardus that he was going to cut his throat with a switchblade knife. Reaching around to get the knife from his pocket, the defendant noticed that his wallet was missing. As he began to look for it, LuPardus managed to distract him by throwing his own wallet in the vicinity of the defendant's search and was then able to escape.

Additional facts relevant to the decision will be discussed below.

*Rufus L. Edmisten, Attorney General, by Daniel F. McLawhorn, Assistant Attorney General, for the State.*

*Donald C. Hicks III for defendant appellant.*

MARTIN, Justice.

[1] The defendant's first assignment of error is that the trial judge erred in overruling his objection to LuPardus's in-court identification of him as the assailant. He claims that his due process rights were violated because of circumstances surrounding two photographic lineups shown to the victim the morning and afternoon after the crimes were committed. We have carefully reviewed this assignment of error and find it without merit.

Identification evidence must be excluded as violating a defendant's rights to due process where the facts reveal a pretrial identification procedure so impermissibly suggestive that there is

a very substantial likelihood of irreparable misidentification. *Simmons v. United States*, 390 U.S. 377, 19 L.Ed. 2d 1247 (1968); *State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982); *State v. Thompson*, 303 N.C. 169, 277 S.E. 2d 431 (1981); *State v. Wilson*, 296 N.C. 298, 250 S.E. 2d 621 (1979). In the present case the victim was shown two pretrial photographic lineups the day after the crimes occurred. The photographs were presented to him in separate bundles without any suggestive comment by police officers present at the time. The first lineup contained eight color photographs and the second contained ten black-and-white photographs. Different photographs of the defendant were used in each lineup. Although in both lineups the defendant was the only person shown wearing a white T-shirt, several other photographs showed black males wearing other kinds of white shirts. At each lineup, LuPardus immediately selected the defendant's photograph without any prompting. The night before he was shown the photographs, LuPardus had described his assailant to police detectives as wearing dark pants and a white T-shirt. Defendant claims that by showing the witness a photograph of the defendant wearing a white T-shirt, the police induced the witness to pick out defendant's photographs from the two lineups.

The facts in *State v. Thompson, supra,* are similar. In *Thompson,* defendant argued that a pretrial photographic lineup was impermissibly suggestive because he was the only individual photographed wearing a red shirt and the witness who was shown the lineup had previously described the perpetrator of the crime as a man dressed in a red shirt. The trial judge conducted a voir dire hearing and found that the photographic identification was not so impermissibly suggestive as to give rise to an irreparable mistaken identification. In our case, several of the photographs were of males with white shirts, although defendant's photograph was the only one in which a male was wearing a white T-shirt. As in *Thompson,* after voir dire hearing, the court concluded that the photographic identification was not so impermissibly suggestive as to give rise to an irreparable mistaken identification. *State v. Leggett, supra.* A trial court's findings entered upon a voir dire hearing are conclusive and binding on appeal if supported by competent evidence. *State v. Lake,* 305 N.C. 143, 150, 286 S.E. 2d 541, 545 (1982). We find nothing in

the record before us that would lead us to conclude that these findings must be disturbed.

Even if the photographic lineup procedures could be found impermissibly suggestive, we find more than adequate evidence in the record to support the trial court's decision to hold LuPardus's in-court identification admissible as being of independent origin. Before the assault, LuPardus had paid particular attention to the man standing outside the arcade, thinking that he was awaiting an opportunity to steal his bicycle. The area was well-lit and the moon was full. When the defendant stopped him in the street, there was also sufficient light for LuPardus to identify him as the man he had seen at the arcade. Upon escape from the alley in which he had been assaulted, LuPardus immediately gave a detailed account of a man fitting White's description to the police. He repeated the description the next day without variance. At trial, he pointed out the defendant without any hesitation as having been his assailant. LuPardus testified that his in-court identification of defendant was based upon his observation of him at the crime scene, rather than on the photographs he viewed. As stated in *Thompson, supra:*

> The factors to be considered in determining whether the in-court identification of defendant is of independent origin include the opportunity of the witness to view the accused at the time of the crime, the witness' degree of attention at the time, the accuracy of his prior description of the accused, the witness' level of certainty in identifying the accused at the time of the confrontation, and the time between the crime and the confrontation.

303 N.C. at 172, 277 S.E. 2d at 434. *See also Neil v. Biggers,* 409 U.S. 188, 34 L.Ed. 2d 401 (1972); *State v. Headen,* 295 N.C. 437, 245 S.E. 2d 706 (1978). Considering the victim's identification of White in light of all the circumstances, we hold that the identification procedures did not give rise to a substantial likelihood of irreparable misidentification, and the trial court's admission of LuPardus's in-court identification of White was not error.

[2] The defendant next assigns as error the trial court's failure to dismiss the charges of kidnapping in the first degree and assault with a deadly weapon with intent to kill inflicting serious

injury. With regard to the first charge, N.C.G.S. 14-39(a)(2) states in relevant part:

> (a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
>
>     . . . .
>
> (2) Facilitating the commission of any felony . . . .

The indictment in the present case listed the felony of sexual offense in the first degree as the purpose for which White forced LuPardus into the alley. The defendant claims that his motive for taking LuPardus into the alley was not to commit a sexual assault, but merely to interrogate the victim concerning the whereabouts of Larry. He contends that the state failed to prove he had forced LuPardus into the alley for the purpose of committing a sexual offense in the first degree as alleged in the indictment and that it was error for the trial judge to deny his motion to dismiss the kidnapping charge.

When an indictment alleges an intent to commit a particular felony, the state must prove the particular felonious intent alleged. *State v. Faircloth,* 297 N.C. 388, 255 S.E. 2d 366 (1979); *State v. Friddle,* 223 N.C. 258, 25 S.E. 2d 751 (1943). Intent, or the absence of it, may be inferred from the circumstances surrounding the event and must be determined by the jury. *State v. Accor and State v. Moore,* 277 N.C. 65, 73, 175 S.E. 2d 583, 588 (1970) (quoting *State v. Thorpe,* 274 N.C. 457, 464, 164 S.E. 2d 171, 176 (1968) ). When ruling on a motion to dismiss on grounds of insufficiency of the evidence, a trial court must view the evidence in the light most favorable to the state, drawing all reasonable inferences in the state's favor. *State v. Cox,* 303 N.C. 75, 277 S.E. 2d 376 (1981). In the present case, the following evidence was sufficient to show that the purpose of the removal was to commit a sexual offense in the first degree and required the submission of the charge to the jury: LuPardus testified that White had forced him into the alley, interrogated him briefly, struck him with his hands, and then ordered him to remove all of his clothes. When LuPardus was nude, White made him get down on his hands and

knees. While in this position, LuPardus heard the sound of a package tearing and then felt the defendant's penis touch him. White committed anal intercourse on the victim twice and forced LuPardus to commit an oral sexual act on him. Later, investigators found lubrication jelly, a condom, and a foil condom pack in the alley near the victim's trousers. From this evidence the jury could have found that because the defendant was prepared to commit a sexual assault on LuPardus when he forced him into the alley and did in fact sexually assault him, he had taken LuPardus there for that purpose. We find no error in the trial judge's denial of the defendant's motion to dismiss the kidnapping charge.

[3] The defendant also claims that the evidence does not support the charge of assault with a deadly weapon with intent to kill inflicting serious bodily injury. The mere proof of an assault with a deadly weapon inflicting serious injury does not by itself establish an intent to kill. *State v. Thacker,* 281 N.C. 447, 189 S.E. 2d 145 (1972). However, the nature of the assault, the manner in which it was made, the weapon, if any, used, and the surrounding circumstances are all matters from which an intent to kill may be inferred. *Id.* In the present case the evidence shows that after stabbing LuPardus over twenty times in the neck and chest with the ice pick, White announced that he was going to kill him with a switchblade knife. It was only when White was reaching for the knife and found his wallet missing that LuPardus managed to escape. We find that this evidence was sufficient to support the charge in the indictment. Defendant's assignment of error is without merit.

[4] The defendant next contends that the trial court erred in refusing to allow one of his witnesses to corroborate the testimony of a previous witness. The record before us shows that defendant's father, John T. White, testified at trial that on the night of the assault he had been at home in a room he rented at the Wheelhouse and Galley and had heard Jeff Shephard yell to him from the second floor that "someone just got stabbed to death over there." He denied having told a police investigator on the morning after the assault that it had been his son, Tommie, who had been the one who told him that someone had been stabbed. The defendant then called Connie Lewis, a maid at the Wheelhouse and Galley, for the purpose of corroborating John T.

White's testimony. When defense counsel asked her, "Do you recall anything unusual happening in reference to those people that you have described?" the court sustained an objection by the state and a voir dire hearing was held to determine whether Lewis's testimony would be admissible. At voir dire the court also sustained an objection by the state to the question, "Miss Lewis, did you hear anything said by those people you described?" Her answer, in the absence of the jury, was that "[t]hey hollered down and said that some — they cursed — and some, that somebody died over there." Although defense counsel explained that he had been hoping to offer her answer to corroborate the earlier testimony, he did not request the trial court to review its ruling on the objection. He did enter an exception to the ruling, however. Therefore, we must determine whether the trial court erred in sustaining the state's objection to the line of questioning.

Defendant offered the testimony of Lewis for the purpose of corroborating the testimony of the witness John T. White as to what he heard someone else say about the killing. White's testimony was brought out on cross-examination. The state was attempting to show that White had said that the defendant made the statement rather than Jeff Shephard. The cross-examination of John T. White and the subsequent testimony of Lewis were only competent to impeach or corroborate White.

The trial judge has discretion to control how far the parties may go in impeaching and corroborating witnesses on collateral matters in a trial. *Gibson v. Whitton*, 239 N.C. 11, 79 S.E. 2d 196 (1953); 1 Brandis on North Carolina Evidence § 42 (1982). Conceivably, in the case at bar, the state could have offered a witness to testify that Connie Lewis was not present at the time, and so on ad infinitum. To allow contradiction or corroboration of collateral facts by other evidence is generally not permitted, as its only effect is to show that the witness is capable of error on immaterial points and to allow it would confuse the issues and unduly prolong the trial. Brandis, *supra*, § 47. It must be remembered that Lewis was not attempting to corroborate White by testifying that White had made a similar statement at a prior time.

Moreover, assuming the exclusion of the answer was error, it was harmless beyond a reasonable doubt. Miss Lewis's statement

that someone said that "somebody died over there" is a far cry from corroborating John White's testimony that someone yelled "someone just got stabbed to death." Defendant must show not only error but prejudice as well. Defendant has failed to show that a different result would have ensued had the evidence been admitted. *State v. Atkinson*, 298 N.C. 673, 259 S.E. 2d 858 (1979). It is not conceivable that this comparatively inconsequential bit of evidence would have affected the verdict of the jury. *Freeman v. Ponder*, 234 N.C. 294, 67 S.E. 2d 292 (1951).

[5] Defendant's final assignment of error is that the trial court impermissibly allowed the prosecutor to make improper and prejudicial remarks to the jury. The record before us does not show that the defendant objected to any of the remarks of which he now complains. He urges, however, that the trial judge had a duty to intervene ex mero motu to curb the prosecutor's remarks even in the absence of any objections by defense counsel.

We find that because defendant did not object at trial to the prosecutor's argument to the jury, he waived the alleged errors and cannot raise them now on appeal. As this Court stated recently in *State v. Brock*, 305 N.C. 532, 290 S.E. 2d 566 (1982):

It is well-settled in this jurisdiction that control of the arguments of counsel rests primarily in the discretion of the presiding judge. *State v. King*, 299 N.C. 707, 264 S.E. 2d 40 (1980). *State v. Thompson*, 293 N.C. 713, 239 S.E. 2d 465 (1977). Ordinarily, objection to the prosecuting attorney's jury argument must be made prior to the verdict for the alleged impropriety to be reversible on appeal. *State v. Smith*, 294 N.C. 365, 241 S.E. 2d 674 (1978); *State v. Williams*, 276 N.C. 703, 174 S.E. 2d 503 (1970) [*death sentence vacated*, 403 U.S. 948, 29 L.Ed. 2d 860 (1971)]. Failure to object waives the alleged error. *Id.*

An exception to this rule is found in capital cases where, because of the severity of the death sentence, this court will review alleged improprieties in the prosecutor's jury argument despite defendant's failure to timely object. *State v. Johnson*, 298 N.C. 355, 259 S.E. 2d 752 (1979). However, even in death cases the impropriety must be extreme for this court to find that the trial judge abused his discretion in not

recognizing and correcting *ex mero motu* an argument that defense counsel failed to find prejudicial when he heard it. *Id.*

*Id.* at 536-37, 290 S.E. 2d at 570.

The defendant here was not charged with a capital offense. Because he failed to raise any objections at trial to the prosecutor's jury argument, he has waived them for purposes of this appeal.

Defendant received a fair trial, free of prejudicial error.

No error.