IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-1175

Filed: 1 December 2020

Edgecombe County, Nos. 17 CRS 51362–63, 1295

STATE OF NORTH CAROLINA

v.

DEZMEION DUBWHA PARKER

Appeal by defendant from judgments entered 26 February 2018 by Judge Walter H. Godwin, Jr., in Edgecombe County Superior Court. Heard in the Court of Appeals 5 February 2020.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General M. Denise Stanford, for the State.*

*Gilda C. Rodriguez for defendant-appellant.*

ZACHARY, Judge.

Defendant Dezmeion Dubwha Parker appeals from judgments entered upon his convictions for robbery with a dangerous weapon, second-degree kidnapping, possession of a firearm by a felon, and attaining the status of a habitual felon. On appeal, Defendant argues: first, that the State presented insufficient evidence that Defendant "personally" effected the victim's unlawful removal from one place to another, and therefore, the trial court erred by denying his motion to dismiss the second-degree kidnapping charge; and second, that his trial attorney rendered ineffective assistance of counsel by failing to stipulate to Defendant's prior conviction

for the purpose of establishing his status as a felon for the charge of possession of a firearm by a felon.

After careful review, we conclude that Defendant received a fair trial, free from error. However, because the appellate record is insufficient to enable full and fair review of Defendant's claim for ineffective assistance of counsel, we dismiss that portion of his appeal without prejudice to Defendant's right to reassert his claim in a subsequent motion for appropriate relief filed in the trial court.

## Background

The evidence presented at trial, taken in the light most favorable to the State, tended to show the following:

Defendant met Zaquinton Best, the victim in this case, sometime in or around the summer of 2016, while Best was living with his half-brother. At that time, Best had a vehicle, and he would "drive [Defendant] around whenever he needed to go somewhere." Defendant and Best became "cousin[s] by marriage" soon thereafter.

In April 2017, Best's car was in the shop with a blown head gasket, so he took the bus to class at Nash Community College while his vehicle was under repair. On 26 April 2017, Best saw Defendant at the bus station, and they began talking. Defendant said that he had recently acquired a vehicle; he gave Best his phone number and told Best to call whenever he needed a ride.

The next day, on 27 April 2017, Best called Defendant and asked him for a ride to Walmart, and then to the Community College. Best told Defendant that he planned to cash a check at Walmart, and that he intended to use the money to pay bills and school fees, and to get his car out of the shop. Defendant agreed to give Best a ride, and they, joined by Defendant's girlfriend, traveled to Walmart.

Best entered Walmart alone and cashed his check. When he returned to the car approximately ten minutes later, Defendant informed him that "he had to make a quick stop somewhere" before he took Best to the Community College. Best asked where they were going, and Defendant answered that "he was going to show [Best]." Defendant was driving at that time, and he instructed Best to get in the backseat of the vehicle; Best trusted Defendant, so he complied and "just sat back."

After a while, however, Best realized that they were driving in the wrong direction from the Community College, and his concerns mounted as the area became less recognizable to him. But whenever Best requested further details about their destination for this unexpected detour, Defendant only said, noncommittally, that "he was going to show [Best]."

The vehicle eventually stopped on a secluded dirt road, surrounded by cotton fields and beehive boxes, in a remote area comprising "nothing but open land" more than 20 miles away from the Walmart (and in the opposite direction from the Community College). Defendant exited the vehicle, pointed a gun at Best, and ordered

- 3 -

him to get out of the car. Defendant demanded that Best "give [him] everything" that he had, and Best surrendered the cash that he had been storing in his sock; Defendant, however, told Best that he knew that he had more money on him, and he instructed Best to remove his clothes. With Defendant's gun still in his face, Best "strip[ped] down" to his "underclothes" and surrendered additional cash. Defendant took Best's cell phone, conducted a final pat-down search for any remaining cash, and then he and his girlfriend drove away, leaving Best alone in an isolated and unfamiliar area, and without any means to seek help. All told, Defendant took from Best $998 in cash, an iPhone, and a bookbag containing, *inter alia*, Best's basketball shoes, as well as textbooks valued at approximately $1,500.

Once Best felt sure that his assailants were gone, he got dressed and started walking. Although Best attempted to hitchhike and "had [his] thumb out" as he walked, he estimated that he nevertheless traveled "about a good ten miles before somebody finally picked [him] up." The driver encouraged Best to report the incident and helped him to contact Detective Matthew Johnson of the Edgecombe County Sheriff's Office.

After Best recounted the events, Detective Johnson's immediate "priority was to locate the crime scene," and he enlisted Best's assistance. Navigating from the backseat of Detective Johnson's vehicle, Best used street signs to direct Detective

Johnson "straight to the site." Upon arrival, Detective Johnson observed "fresh tire marks" in the dirt path.

Best provided Detective Johnson with a physical description of the robber, who Best identified as "a cousin," but declined to name. Best's father and grandmother subsequently provided Detective Johnson with Defendant's "complete identity," including his full name and a physical description consistent with that provided by Best.

At Detective Johnson's request, on 23 May 2017, Detective Wade Spruill, Jr., administered a photo lineup to Best. From an array of six photographs of different individuals, Best quickly identified Defendant as the perpetrator of the offenses against him.

On 24 May 2017, a magistrate issued arrest warrants charging Defendant with (i) robbery with a dangerous weapon, (ii) second-degree kidnapping, and (iii) possession of a firearm by a felon. On 7 August 2017, a grand jury returned true bills of indictment formally charging Defendant with the same offenses, along with an additional charge of attaining the status of a habitual felon.

Defendant's case came on for a jury trial in Edgecombe County Superior Court on 26 February 2018, the Honorable Walter H. Godwin, Jr., presiding. At the conclusion of all the evidence, the jury returned verdicts finding Defendant guilty of the three substantive offenses. Defendant subsequently pleaded guilty to attaining

the status of a habitual felon. The trial court entered judgments sentencing Defendant to three consecutive terms of 75-102 months in the custody of the North Carolina Division of Adult Correction, with 266 days' credit for time served.

Defendant appeals.

## Discussion

On appeal, Defendant argues that (1) the trial court erred in denying his motion to dismiss the second-degree kidnapping charge; and (2) Defendant was denied effective assistance of counsel due to his attorney's failure to enter into the record Defendant's stipulation to his prior conviction for felony larceny from the person. We address each issue in turn.

### I. Motion to Dismiss

Defendant first argues that the trial court erred by denying his motion to dismiss the second-degree kidnapping charge because the State presented insufficient evidence of the essential element of "removal." We disagree.

*A. Standard of Review*

Upon a criminal defendant's motion to dismiss, "the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993) (citation omitted). "Substantial evidence is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78–79, 265 S.E.2d 164, 169 (1980).

"In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." *State v. Scott*, 356 N.C. 591, 596, 573 S.E.2d 866, 869 (2002) (citations omitted). "The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both." *Id.* "Once the court decides that a reasonable inference of [the] defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, taken singly or in combination, satisfy it beyond a reasonable doubt that the defendant is actually guilty." *Id.* (citation and internal quotation marks omitted).

Moreover, in "ruling on a motion to dismiss, the trial court should be concerned only about whether the evidence is sufficient for jury consideration, not about the weight of the evidence." *Id.* at 596–97, 573 S.E.2d at 869. The trial court must consider "[b]oth competent and incompetent evidence." *Id.* at 596, 573 S.E.2d at 869 (citation omitted). The defendant's evidence, however, "should be disregarded unless it is favorable to the State or does not conflict with the State's evidence. The defendant's evidence that does not conflict may be used to explain or clarify the evidence offered by the State." *Id.* (citations and internal quotation marks omitted).

On appeal, we conduct de novo review of the trial court's denial of a criminal defendant's motion to dismiss. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

*B. Issue Preservation*

We must first address the State's contention that Defendant waived appellate review of his challenge to the trial court's denial of his motion to dismiss. The State notes that, at trial, Defendant's motion to dismiss the second-degree kidnapping charge "addressed the specific element of consent and did not present a general challenge to the sufficiency of the evidence as to all elements of the charge." The State asserts, therefore, that "Defendant failed to preserve the issue of sufficiency of the evidence as to the other elements" of second-degree kidnapping, and accordingly, requests that we dismiss this portion of his appeal.

It is manifest that this Court will not entertain a defendant's challenge to the sufficiency of the evidence to prove the charged offense, absent a timely motion to dismiss made at trial:

> If a defendant makes such a motion after the State has presented all its evidence and has rested its case and that motion is denied and the defendant then introduces evidence, [the] defendant's motion for dismissal . . . made at the close of [the] State's evidence is waived. Such a waiver precludes the defendant from urging the denial of such motion as a ground for appeal.
>
> A defendant may make a motion to dismiss the action . . . at the conclusion of all the evidence, irrespective

of whether [the] defendant made an earlier such motion. If the motion at the close of all the evidence is denied, the defendant may urge as ground for appeal the denial of the motion made at the conclusion of all the evidence. However, if a defendant fails to move to dismiss the action . . . at the close of all the evidence, [the] defendant may not challenge on appeal the sufficiency of the evidence to prove the crime charged.

N.C.R. App. P. 10(a)(3).

During the pendency of this appeal, our Supreme Court issued its decision in *State v. Golder*, 374 N.C. 238, 839 S.E.2d 782 (2020), clarifying Rule 10(a)(3)'s preservation requirements for challenges to the sufficiency of the evidence in criminal appeals. In construing Rule 10(a)(3), the *Golder* Court first observed that "our Rules of Appellate Procedure treat the preservation of issues concerning the sufficiency of the State's evidence differently than the preservation of other issues under Rule 10(a)." 374 N.C. at 246, 839 S.E.2d at 788. "[A]lthough Rule 10(a)(3) requires a defendant to make a motion to dismiss in order to preserve an insufficiency of the evidence issue, unlike Rule 10(a)(1)–(2), Rule 10(a)(3) does not require that the defendant assert a specific ground for a motion to dismiss for insufficiency of the evidence." *Id.* at 245–46, 839 S.E.2d at 788.

The Court thus reasoned:

Because our case law places an affirmative duty upon the trial court to examine the sufficiency of the evidence against the accused for every element of each crime charged, it follows that, under Rule 10(a)(3), *a defendant's motion to dismiss preserves all issues related to sufficiency*

*of the State's evidence for appellate review.*

*Id.* at 246, 839 S.E.2d at 788 (emphasis added).

In the present case, Defendant moved to dismiss the three substantive charges at the close of the State's case-in-chief, and then made *specific* arguments regarding certain elements of each offense. As to second-degree kidnapping, Defendant challenged the sufficiency of the evidence to support one element: consent. Specifically, Defendant argued that dismissal was appropriate because Best testified "that he got in that car willingly. He said [Defendant] kicked him out of the car. [Best] never said that he was kidnapped, that he was taken against his will." Defendant asserted nearly verbatim arguments when he renewed his motion to dismiss at the close of all the evidence.

On appeal, however, Defendant now challenges a different element of kidnapping: the victim's unlawful *removal* from one place to another. The State contends that, by abandoning his trial arguments regarding the element of consent, "Defendant failed to preserve the issue of sufficiency of the evidence as to the other elements of kidnapping." However, as explained above, our Supreme Court's decision in *Golder* directly forecloses the State's argument. *See id.* at 249, 839 S.E.2d at 790 (abrogating a long-established line of this Court's "jurisprudence, which ha[d] attempted to categorize motions to dismiss as general, specifically general, or specific,

and to assign different scopes of appellate review to each category," and deeming those prior decisions "inconsistent with Rule 10(a)(3)").

"[D]efendant's simple act of moving to dismiss at the proper time preserved all issues related to the sufficiency of the evidence for appellate review." *Id.* at 246, 839 S.E.2d at 788. Accordingly, pursuant to our Supreme Court's holding in *Golder*, this issue is properly before our Court.

## C. Evidence of "Removal"

Kidnapping is a specific-intent crime, the elements of which are set forth by statute. *State v. China*, 370 N.C. 627, 637 n.6, 632, 811 S.E.2d 145, 151–52 n.6, 149 (2018). N.C. Gen. Stat. § 14-39 provides, in relevant part:

> (a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
>
> . . . .
>
> (2) Facilitating the commission of any felony or facilitating [the] flight of any person following the commission of a felony[.]

N.C. Gen. Stat. § 14-39(a)(2) (2019).

In that kidnapping is a specific-intent offense, the State must establish "that the defendant unlawfully confined, restrained, or removed" the victim for one of the statutorily enumerated purposes set forth under section 14-39(a). *State v. Moore*, 315

N.C. 738, 743, 340 S.E.2d 401, 404 (1986); *see also* N.C. Gen. Stat. § 14-39(a)(1)–(6) (listing the purposes that may provide the specific intent necessary to support a kidnapping charge). "The indictment in a kidnapping case must allege the purpose or purposes upon which the State intends to rely, and the State is restricted at trial to proving the purposes alleged in the indictment." *Moore*, 315 N.C. at 743, 340 S.E.2d at 404.

Where the indictment alleges that the defendant kidnapped another person for the purpose of facilitating the commission of a specific felony, N.C. Gen. Stat. § 14-39(a)(2), the State must prove that the defendant acted with "the particular felonious intent alleged." *State v. White*, 307 N.C. 42, 48, 296 S.E.2d 267, 270 (1982) (citations omitted). "Intent, or the absence of it, may be inferred from the circumstances surrounding the event and must be determined by the jury." *Id.* at 48, 296 S.E.2d at 271 (citations omitted).

In the instant case, the relevant indictment charged Defendant with kidnapping in the second degree, based on the following allegations:

> COUNT II:
> The jurors for the State upon their oath present that on or about the date of offense shown and in the county and state named above, the defendant named above, unlawfully, willfully and feloniously did kidnap Zaquinton Best, a person who had attained the age of 16 years or more by unlawfully removing the victim from one place to another, without the consent of the victim, and for the purpose of facilitating the commission of a felony, Robbery with a Dangerous Weapon G.S. 14-87.

Accordingly, to convict Defendant of second-degree kidnapping, the State was required to prove that Defendant unlawfully removed Best from one place to another, without Best's consent, and for the purpose of facilitating the commission of armed robbery. *Id.* at 48, 296 S.E.2d at 270.

For purposes of N.C. Gen. Stat. § 14-39(a), to unlawfully "remove [a person] from one place to another" requires proof of "a removal separate and apart from that which is an inherent, inevitable part of the commission of another felony." *State v. Whittington*, 318 N.C. 114, 121, 347 S.E.2d 403, 407 (1986) (citation omitted). "[T]o permit separate and additional punishment where there has been only a technical asportation, inherent in the other offense perpetrated, would violate a defendant's constitutional protection against double jeopardy." *Id.* (citation omitted); *cf. State v. Irwin*, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981) ("[The drugstore employee's] removal to the back of the store was an inherent and integral part of the attempted armed robbery. To accomplish [the] defendant's objective of obtaining drugs it was necessary that either [the owner or the employee] go to the back of the store to the prescription counter and open the safe. [The d]efendant was indicted for the attempted armed robbery of both individuals. [The employee's] removal was a mere technical asportation and insufficient to support conviction for a separate kidnapping offense.").

Whether the evidence supports a removal "separate and apart" from that which is "inherent" to the commission of another felony, or instead merely establishes "a technical asportation," is a fact-specific determination, made on a case-by-case basis. *See, e.g.*, *Whittington*, 318 N.C. at 121, 347 S.E.2d at 407; *see also State v. Fulcher*, 294 N.C. 503, 522, 243 S.E.2d 338, 351 (1978) ("[I]t was clearly the intent of the Legislature to make resort to a tape measure or a stop watch unnecessary in determining whether the crime of kidnapping has been committed.").

On appeal, Defendant argues that the trial court erroneously denied his motion to dismiss the second-degree kidnapping charge because the State failed to prove that he "personally committed" the acts constituting Best's unlawful removal from one place to another. According to Defendant, the evidence demonstrates that he "did not have control over the means used to 'unlawfully remove' " Best, because "Best repeatedly testified that it was [Defendant's] *girlfriend*, and not [Defendant], who drove them from Walmart to the remote location where the robbery was alleged to have occurred."[1] (Emphasis added).

---

[1] Defendant also argues that because the trial court did not instruct the jury on any theory of vicarious liability, "the State failed to meet its burden of presenting substantial evidence 'on every essential element' of the offense of second-degree kidnapping."

Defendant correctly observes that the State did not request, and the trial court did not deliver, a jury instruction on acting in concert or any other theory of vicarious liability. Yet, as Defendant acknowledges, "the State chose to prosecute [Defendant] as personally responsible for the removal of [Best] in the commission of second-degree kidnapping. *The State could have advanced a vicarious liability theory but it did not.*" (Emphasis added). Accordingly, such an instruction would have been wholly inappropriate in this case.

In support of his argument, Defendant cites two brief portions of Best's testimony, including the following exchange during cross-examination:

> [DEFENSE COUNSEL:] What kind of car did you say [Defendant] was driving?
>
> [BEST:] He wasn't driving. He had the girl with him that was driving. I think it was like [a] box Lincoln.

A careful and thorough review of the trial transcript reveals that Best's testimony regarding the driver's identity was, admittedly, inconsistent. For example, contrary to the statements that Defendant cites favorably on appeal, in the testimony below, Best clearly identifies *Defendant* as the driver:

> [THE STATE:] Okay. Now, tell me about the ride from Walmart. Where did you wind up going?
>
> [BEST:] He said he had to make a quick stop somewhere. Then I said where. He said he was going to show me. *He ended up driving.* I was just sitting back riding. He told me to go in the back seat he had back there. . . .
>
>       . . . .
>
> Q. Sir, do you recognize the scene depicted in State's Exhibit 11?
>
> A. Yes, I do.
>
> Q. Where is this?
>
> A. *The road he took me to.* That's the field right there. Those are the boxes. (Indicating.)

(Emphases added).

Notwithstanding Best's lack of clarity regarding the driver's identity, upon Defendant's motion to dismiss, the evidence must be viewed "in the light most favorable to the State, giving the State the benefit of all reasonable inferences. *Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve.*" *Scott*, 356 N.C. at 596, 573 S.E.2d at 869 (emphasis added). "In addition, the defendant's evidence should be disregarded unless it is favorable to the State or does not conflict with the State's evidence." *Id.*

Viewed in the light most favorable to the State, this evidence supports a finding that Defendant drove from Walmart to the isolated site of the robbery, or alternatively, that both Defendant and his girlfriend drove the car at various times during these events. "While [D]efendant points to alternative inferences that the jury could draw" from Best's testimony on this issue, "the State is not required to exclude all other possible inferences in order to defeat a motion to dismiss." *State v. Davis*, 158 N.C. App. 1, 14, 582 S.E.2d 289, 298 (2003).

In any case, Defendant's suggestion that he could not be convicted of kidnapping if he "did not have control over the means used" to effect Best's unlawful removal—that is, if he did not drive the car—is simply incorrect. It is well settled that "[t]he use of actual physical force or violence is not always essential to the commission of the offense of kidnapping." *State v. Sexton*, 336 N.C. 321, 361, 444 S.E.2d 879, 901 (citations and internal quotation marks omitted), *cert. denied*, 513 U.S. 1006, 130 L.

Ed. 2d 429 (1994). "Threats and intimidation are equivalent" substitutes for the use of force, *id.*, but misrepresentations or deceit may also suffice: indeed, "[a] kidnapping can be just as effectively accomplished by fraudulent means as by the use of force, threats or intimidation." *State v. Sturdivant*, 304 N.C. 293, 307, 283 S.E.2d 719, 729 (1981) (citations omitted).

Where fraud or misrepresentations "amounting substantially to a coercion of the [victim's] will" substitute for actual force in effecting a kidnapping—whether by unlawful confinement, restraint, or removal, as in this case—"there is, in truth and in law, no consent at all on the part of the victim." *State v. Jackson*, 309 N.C. 26, 40, 305 S.E.2d 703, 714 (1983) (citation and quotation marks omitted). To meet its burden of proof, the State must demonstrate "that the fraud or trickery directly induced the victim to be removed to a place other than where the victim intended to be." *Davis*, 158 N.C. App. at 13, 582 S.E.2d at 297 (citations omitted).

In the present case, on 27 April 2017, Best asked Defendant, his cousin by marriage, to drive him to Walmart, and then to the Community College, because his own vehicle was in the shop. Best told Defendant that he was going to Walmart to cash a check, the funds from which he intended to use for bills and to pay to get his car out of the shop. It is reasonable to infer from these statements that Best's check was for a significant amount of money. After Defendant agreed to give Best a ride, Defendant, his girlfriend, and Best traveled to Walmart together.

Best entered Walmart alone, cashed his check, and returned to the car approximately ten minutes later. But when he asked Defendant to take him to the Community College as planned, Defendant claimed that "he had to make a quick stop somewhere" first, and he instructed Best to get in the backseat of the car. Because he "trusted" his cousin and still believed that Defendant intended to take him to the Community College, Best complied and "just sat back." Best grew increasingly concerned, however, as he realized that they were driving in the wrong direction, and he no longer recognized the area; yet, whenever he asked Defendant "where he was going[,]" Defendant only responded, vaguely, that "he was going to show [Best]."

The vehicle eventually pulled off onto a remote dirt path more than 20 miles away from the Walmart, in an isolated area comprising "nothing but open land." There, Defendant pulled out a gun, ordered Best out of the car, robbed him at gunpoint, and drove away.

It is evident that Defendant's initial and continuing "trickery directly induced [Best] to be removed to a place other than where [he] intended to be." *Id.* (citations omitted). Defendant fraudulently induced Best to enter the car under the pretext of providing him with a ride to the Community College; it is clear, however, that Defendant never intended to follow through on his illusory offer. "To this extent the action of removal was taken for the purpose of facilitating the felony" of armed robbery. *Whittington*, 318 N.C. at 122, 347 S.E.2d at 407 (citation omitted).

Moreover, Defendant's lie was quite clearly "designed to remove [Best] from the view of a passerby who might have hindered the commission of the crime." *Id.* (citation omitted). Defendant's misrepresentations regarding the parties' ultimate destination enabled him to remove Best to the secluded location, where Defendant robbed him at gunpoint:

> [THE STATE:] Now, what were you thinking when he had the gun pointed at you?
>
> [BEST:] This is the last time I be living. I thought he was going to kill me that day.
>
> Q. Were you afraid?
>
> A. I wasn't really afraid, but I was nervous. *When we was in the alley if he would have killed me there wouldn't nobody know.* The whole time, the whole thing [there] weren't no cars riding by there. *It was like a type of alley you really wouldn't know.*
>
> Q. Could you see any people at all around?
>
> A. *Huh-Uh. (No.) No cars went by that road.*

(Emphases added). *Cf. id.* at 122, 347 S.E.2d at 408 ("Defendant could have perpetrated the offense when he first threatened the victim. Instead, he chose to remove the victim away from a brightly lit area, near houses and the highway, to a darker, more secluded area. This removal, designed to facilitate [the] defendant's perpetration of the sexual assault, was not a mere technical asportation.").

Viewed in the light most favorable to the State, this evidence is more than sufficient to permit a reasonable juror to find that Defendant unlawfully removed Best by means of fraud or trickery, without Best's consent, for the purpose of facilitating the commission of armed robbery. Therefore, the trial court did not err by denying Defendant's motion to dismiss the charge of second-degree kidnapping.

## II. Ineffective Assistance of Counsel

Defendant next argues that he received ineffective assistance of counsel because his trial attorney failed to enter into the record Defendant's stipulation to his prior conviction for felony larceny from the person. Because we conclude that the record is insufficient to enable full appellate review on the merits, we dismiss this portion of Defendant's appeal without prejudice to Defendant's right to reassert this claim in a motion for appropriate relief filed with the trial court.

In order to demonstrate ineffective assistance of counsel, a defendant must prove that (1) his trial attorney's "performance was deficient[,] and (2) the deficient performance prejudiced the defense." *State v. Edgar*, 242 N.C. App. 624, 631, 777 S.E.2d 766, 770 (2015) (citation and internal quotation marks omitted). To establish prejudice, the defendant generally "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 631, 777 S.E.2d at 770–71 (citation omitted).

As our appellate courts have consistently reiterated, however, claims for ineffective assistance of counsel generally "should be considered through motions for appropriate relief and not on direct appeal." *State v. Stroud*, 147 N.C. App. 549, 553, 557 S.E.2d 544, 547 (2001) (citation omitted), *cert. denied*, 356 N.C. 623, 575 S.E.2d 758 (2002).

> This is so because on direct appeal, review is limited to the cold record, and the Court is without the benefit of information provided by [the] defendant to trial counsel, as well as [the] defendant's thoughts, concerns, and demeanor that could be provided in a full evidentiary hearing on a motion for appropriate relief. Only when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing will an effective assistance of counsel claim be decided on the merits on direct appeal.

*Edgar*, 242 N.C. App. at 632, 777 S.E.2d at 771 (citations and internal quotation marks omitted).

Accordingly, on appeal, we must first determine whether the defendant's "ineffective assistance of counsel claims have been prematurely brought, in which event we must dismiss those claims without prejudice to the defendant's right to reassert them during a subsequent motion for appropriate relief proceeding." *State v. McNeill*, 371 N.C. 198, 217, 813 S.E.2d 797, 811 (2018) (citation and internal quotation marks omitted), *cert. denied*, __ U.S. __, 203 L. Ed. 2d 417 (2019).

Here, Defendant asserts that he received ineffective assistance of trial counsel because his attorney failed to stipulate to his prior conviction for felony larceny from the person. Defendant maintains that due to defense counsel's error, the State subsequently introduced evidence of the nature of this prior conviction in order to prove Defendant's status as a felon, an essential element of the offense of possession of a firearm by a felon, N.C. Gen. Stat. § 14-415.1, and that Defendant was prejudiced as a result. After careful review, we conclude that the record is insufficient to enable appellate review of Defendant's claim.

Just before trial in this matter, the State inquired whether Defendant "would . . . be willing to enter any stipulations pretrial . . . . [s]pecifically, as to his felony status as to the felony by firearm charge." Defense counsel responded that he would need to "speak with [his] client first." The trial court agreed and instructed the parties to inform the court of their "decision on that prior to the [S]tate resting. That's what 15A-928 requires." Trial commenced shortly thereafter.

Later, during the State's presentation of evidence, but outside of the presence of the jury, the trial court asked if the parties had determined whether there would be "an admission" pursuant to N.C. Gen. Stat. § 15A-928. Defense counsel replied, "There will be an admission, Your Honor, I will stipulate." Immediately thereafter, the trial court conducted a colloquy with Defendant "concerning [his] . . . reaching the status of a[ ] habitual felon" and verifying that it was, in fact, Defendant's "plan to

admit those prior convictions concerning that indictment." Defendant affirmed his intent to do so through his attorney.

Following the colloquy on Defendant's habitual-felon indictment, but before the jury's return to the courtroom, the State asked: "[R]egarding the possession . . . of a firearm by a felon, will we need a stipulation as to that element as well? Him being a prior convicted felon on that offense." The trial court replied:

> THE COURT: Well, upon the conviction of any of the felon[ie]s, that could elevate within that habitual indictment. Basically, I just was asking him is he going to admit the prior convictions and he said that he was. We'll have to make a determination as to the level of the enhanced punishment based on any conviction that may or may not be brought back by the jury before we go forward with that issue.

The jury was then returned to the courtroom for further evidence from the State.

The State's penultimate witness was Kimberly Harrell, an assistant clerk for the criminal division of the Edgecombe County Clerk of Superior Court. Harrell's testimony regarding State's Exhibit 9, a true copy of the judgment of Defendant's 16 February 2011 conviction for felony larceny from the person, provides the basis for Defendant's claim for ineffective assistance of counsel. In particular, Defendant complains that "[t]he record reflects no attempt by defense counsel to pre-empt [Harrell's] testimony" regarding Defendant's 2011 conviction. We agree, in that the record is *silent* as to this issue.

Consequently, here, "the cold record reveals that . . . further investigation is required" to enable full and fair review of the merits of Defendant's claim for ineffective assistance of counsel. *McNeill*, 371 N.C. at 217, 813 S.E.2d at 811. Before the State called Harrell to testify, the prosecutor requested that the trial court permit the parties to "approach just real briefly[.]" The court obliged, and the transcript indicates that an "OFF-THE-RECORD DISCUSSION AT THE BENCH" followed. However, the record contains no evidence of the issues and objections raised during this unrecorded bench conference, nor even of its duration.

Accordingly, we conclude that Defendant's claim for ineffective assistance of counsel "ha[s] been prematurely brought," and therefore, we dismiss this portion of Defendant's appeal without prejudice to his right to reassert this claim "during a subsequent motion for appropriate relief proceeding." *Id.*

## Conclusion

For the reasons stated herein, the trial court did not err in denying Defendant's motion to dismiss the second-degree kidnapping charge. However, because the record is insufficient to enable our review of Defendant's claim of ineffective assistance of counsel, we dismiss that portion of his appeal without prejudice to Defendant's right to reassert his claim in a motion for appropriate relief filed with the trial court.

NO ERROR IN PART; DISMISSED IN PART.

Judges MURPHY and ARROWOOD concur.